**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

THOMAS RICHARDS,

*Plaintiff*,

v.

GOOGLE LLC,

*Defendant*.

Case No. 5:25-cv-00082-MFU-JCH
Senior District Judge Michael F. Urbanski
Magistrate Judge Joel Hoppe

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT GOOGLE LLC'S MOTION TO DISMISS AMENDED COMPLAINT**

John E. Schmidtlein, *pro hac vice*
Stephen J. Fuzesi, *pro hac vice*
Sean M. Douglass (VSB No. 83835)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
jschmidtlein@wc.com
sfuzesi@wc.com
sdouglass@wc.com

*Attorneys for Google LLC*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................1

LEGAL STANDARD.............................................................................................................2

ARGUMENT .........................................................................................................................2

I.    THE CONSTITUTIONAL CLAIMS SHOULD BE DISMISSED (COUNTS
      1 & 2). ......................................................................................................................3

      A.    Plaintiff's Claims Fail Because Google Is A Private Company. ............................3

      B.    Plaintiff's Claims Are Barred by the Statute of Limitations....................................6

II.   THE RFRA CLAIM SHOULD BE DISMISSED (COUNT 5).........................................7

III.  THE STATE-LAW CLAIMS SHOULD BE DISMISSED. ............................................8

      A.    All Claims Are Barred by the Applicable Statutes of Limitations. ........................8

      B.    All Claims Are Barred by the First Amendment. ....................................................9

      C.    All Claims Are Barred by Section 230. ..................................................................10

      D.    The State-Law Claims Fail for Additional Reasons on Their Own
            Terms. ......................................................................................................................12

            1.    The Tortious Interference and Intentional Interference Claims
                  Fail (Counts 3 & 12). ..................................................................................12

            2.    The Common Carrier Claim Fails (Count 4). ...........................................15

            3.    The VCPA Claim Fails (Count 6)................................................................19

            4.    The Civil Conspiracy Claim Fails (Count 7). ............................................21

            5.    The Fraudulent Misrepresentation Claim Fails (Count 8). ........................23

            6.    The Unjust Enrichment Claim Fails (Count 9). .........................................24

            7.    The Defamation by Implication Claim Fails (Count 10). ..........................26

            8.    The Virginia Misappropriation Claim Fails (Count 11). ..........................29

CONCLUSION....................................................................................................................30

# TABLE OF AUTHORITIES

## CASES

*303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) .......................................................................10

*A Soc'y Without A Name v. Virginia*, 655 F.3d 342 (4th Cir. 2011)................................................7

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013) ...............................18

*Am. Online, Inc. v. GreatDeals.Net*, 49 F. Supp. 2d 851 (E.D. Va. 1999) ...................................16

*Antunes v. Rector & Visitors of Univ. of Va.*, 627 F. Supp. 3d 553 (W.D. Va. 2022)....................4

*Arkansas Nursing Home Acquisition, LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621 (D. Md. 2020)........................................................................................................................................25

*Arora v. Sahai*, 2004 WL 3606912 (W.D. Va. 2004) .....................................................................9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................................2

*Baker v. Elam*, 883 F. Supp. 2d 576 (E.D. Va. 2012)...................................................................20

*Bd. of Dirs. of Lesner Pointe Condo. on Chesapeake Bay Ass'n, Inc. v. Harbour Point Bldg. Corp.*, 2002 WL 32072394 (Va. Cir. Ct. 2002) ..........................................................21, 22

*Bennett v. Google, LLC*, 882 F.3d 1163 (D.C. Cir. 2018) ............................................................11

*Bethel v. City of Norfolk*, 2016 WL 11672874 (E.D. Va. 2016)......................................................7

*Bhutta v. DRM Constr. Corp.*, 2023 WL 3006591 (E.D. Va. 2023) .......................................19, 20

*Biden v. Knight First Amendment Inst. at Columbia Univ.*, 141 S. Ct. 1220 (2021) ...................16

*Billard v. Charlotte Cath. High Sch.*, 101 F.4th 316 (4th Cir. 2024) .............................................8

*Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180 (4th Cir. 1998) ..................................................28

*Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)..............4, 7

*Blanck v. McKeen*, 707 F.2d 817, 819 (4th Cir. 1983) ..................................................................7

*Blatty v. N.Y. Times Co.*, 42 Cal.3d 1033 (1986).........................................................................28

*Bregel v. Busch Ent. Corp.*, 248 Va. 175 (1994) ...................................................................16, 17

*Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288 (2001)...........................................................................................................................................4

*Cadmus v. Williamson*, 2016 WL 1047087 (W.D. Va. 2016) .......................................25

*Carlton v. Boudar*, 118 Va. 521 (1916) .................................................................16

*Casterlow-Bey v. Google Internet Search Engine Co.*, 2017 WL 6876215 (W.D. Wash. 2017) ..................................................................................................................3

*Cellco P'ship v. FCC*, 700 F.3d 534 (D.C. Cir. 2012)...................................................18

*Ciralsky v. C.I.A.*, 2010 WL 4724279 (E.D. Va. 2010) .................................................7

*Clowdis v. Silverman*, 2019 WL 1415454 (E.D. Va. 2019)............................................7

*Compel v. Citi Mortg. Inc.*, 2005 WL 4904816 (E.D. Va. 2005) .................................27

*D'Agostino v. Appliances Buy Phone, Inc.*, 2015 WL 10434721 (N.J. Super. Ct. App. Div. 2016) ........................................................................................................17

*Daniloff v. Google, LLC*, 2023 WL 1103648 (D. Or. 2023)..........................................11

*Davison v. Facebook, Inc.*, 370 F. Supp. 3d 621 (E.D. Va. 2019) ...............................6

*DeBauche v. Trani*, 191 F.3d 499 (4th Cir. 1999) .......................................................3

*Devansky v. Dryvit Sys., Inc.*, 52 Va. Cir. 359 (2000) ................................................24

*Dowbenko v. Google Inc.*, 582 F. App'x 801 (11th Cir. 2014) ...............................11, 12

*Dragulescu v. Va. Union Univ.*, 223 F. Supp. 3d 499 (E.D. Va. 2016)....................28, 29

*Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207 (2014)...................................9

*East West, LLC v. Rahman*, 873 F. Supp. 2d 721 (E.D. Va. 2012) ......................9, 12, 13

*Edwards v. Schwartz*, 378 F. Supp. 3d 468 (W.D. Va. 2019) .....................................14

*Egbert v. Boule*, 596 U.S. 482 (2022).........................................................................4

*e-ventures Worldwide, LLC v. Google, Inc.*, 2017 WL 2210029 (M.D. Fla. 2017) ......10

*Feeley v. Total Realty Mgmt.*, 660 F. Supp. 2d 700 (E.D. Va. 2009) ...........................20

*Fravel v. Ford Motor Co.*, 973 F. Supp. 2d 651 (W.D. Va. 2013)................................21

*Gibson v. Boy Scouts of Am.*, 163 F. App'x 206 (4th Cir. 2006).................................29

*Gill v. Food Lion, LLC*, 2025 WL 444764 (W.D. Va. 2025) .......................................30

*Goddard v. Apogee Retail LLC*, 2021 WL 2589727 (D. Md. 2021) ...............................8

*H.D. Oliver Funeral Apartments, Inc. v. Dignity Funeral Servs., Inc.*, 964 F. Supp. 1033 (E.D. Va. 1997) ................................................................................................................20

*Hamilton v. Boddie-Noell Enters., Inc.*, 88 F. Supp. 3d 588 (W.D. Va. 2015) ...........................21

*Hopson v. Google LLC*, 2023 WL 2733665 (W.D. Wis. 2023) ...................................................10

*Hurst v. State Farm Mut. Auto Ins. Co.*, 2007 WL 951692 (W.D. Va. 2007) ...............................9

*Icon Health & Fitness, Inc. v. Consumer Affairs.com*, 2017 WL 2728413 (D. Utah 2017) .........29

*Jayne v. Google Internet Search Engine Founders*, 2007 WL 2852383 (M.D. Pa. 2007).............3

*Jenkins v. Valley Health Sys.*, 2024 WL 3236418 (W.D. Va. 2024) ...............................................2

*Jian Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433 (S.D.N.Y. 2014) ...........................................10

*Julian v. Rigney*, 2014 WL 1207980 (W.D. Va. 2014) ..........................................................23, 24

*Kissinger-Stankevitz v. Town of Tappahannock*, 750 F. Supp. 3d 590 (E.D. Va. 2024)..............22

*Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160 (4th Cir. 2014)....................15

*Lam v. Shaffer*, 2021 WL 5632085 (W.D. Va. 2021) ...................................................................6

*Lambert v. Sanofi US Servs., Inc.*, 2024 WL 1608018 (W.D. Va. 2024) .......................................8

*Langdon v. Google, Inc.*, 474 F. Supp. 2d 622 (D. Del. 2007)..........................................3, 10, 11

*Lewis v. Google LLC*, 461 F. Supp. 3d 938 (N.D. Cal. 2020) ........................................3, 4, 11, 12

*Liberty Univ., Inc. v. Lew*, 733 F.3d 72 (4th Cir. 2013).................................................................8

*Lokhova v. Halper*, 995 F.3d 134 (4th Cir. 2021).......................................................................14

*Lynch v. A & A Exec. Trans. Servs., Inc.*, 2025 WL 1085796 (W.D. Va. 2025)............................8

*M.P. v. Meta Platforms Inc.*, 127 F.4th 516 (4th Cir. 2025).......................................................11

*Marsh v. Alabama*, 326 U.S. 501 (1946) .................................................................................4, 6

*Mays v. Smith*, 70 F.4th 198 (4th Cir. 2023)...............................................................................4

*Meadows v. Northrop Grumman Innovation Sys., Inc.*, 436 F. Supp. 3d 879 (W.D. Va. 2020) ................................................................................................................22

*Mentavlos v. Anderson*, 249 F.3d 301 (4th Cir. 2001)..................................................................6

*Microsoft Corp. v. #9 Software, Inc.*, 2005 WL 3447965 (E.D. Va. 2005)..................................20

*Minneci v. Pollard*, 565 U.S. 118 (2012) ...................................................................4

*Mirafuentes v. Estevez*, 2015 WL 8177935 (E.D. Va. 2015) .........................................13

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) ..............................................9, 10, 16

*Moore v. Nat'l Collegiate Athletic Ass'n*, 2022 WL 2306761 (E.D. Va. 2022) .............9, 29, 30

*Morrissey v. WTVR, LLC*, 432 F. Supp. 3d 617 (E.D. Va. 2020) ....................................27

*Mozilla Corp. v. FCC*, 940 F.3d 1 (D.C. Cir. 2019) ......................................................18

*Muncy v. Centex Home Equity Co.*, 2014 WL 3359335 (W.D. Va. 2014) .....................23, 24

*Nexus Servs., Inc. v. Vance*, 2018 WL 542977 (W.D. Va. 2018) ....................................27

*Northstar Aviation, LLC v. Alberto*, 332 F. Supp. 3d 1007 (E.D. Va. 2018) .................13

*Odyssey Imaging, LLC v. Cardiology Assocs. of Johnston, LLC*, 752 F. Supp. 2d 721
    (W.D. Va. 2010) ...............................................................................................25, 26

*Ohio v. Google LLC*, No. 21-CV-H-06-0274 (Ohio Ct. Com. Pl. Aug. 15, 2025) ...........16, 17, 18

*Olgiati v. Breitschmid*, 708 F. Supp. 3d 805 (W.D. Va. 2023) .......................................28

*Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104 (4th Cir. 2022) ......................................5

*Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176 (4th Cir. 2009) ...................................4

*Prager Univ. v. Google LLC*, 951 F.3d 991 (9th Cir. 2020) ........................................3, 6

*Preferred Sys. Sols. v. GP Consulting LLC*, 284 Va. 382 (2012) ...................................12

*Pullen Farm, LLC v. Seedway, LLC*, 2024 WL 1252374 (W.D. Va. 2024) ......................23

*Reitz v. CVY of Alexandria, LLC*, 2025 WL 895204 (E.D. Va. 2025) .............................24

*Republican Nat'l Comm. v. Google, Inc.*, 2023 WL 5487311 (E.D. Cal. 2023) ..............17

*Respess v. VMI Alumni Ass'n*, 2025 WL 978228 (W.D. Va. 2025) ..................................5

*Riggsby v. Tritton*, 143 Va. 903 (Ct. App. 1925) ...........................................................16

*Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144 (4th Cir. 2012) ..................................25

*Rumble, Inc. v. Google LLC*, 2025 WL 1455820 (N.D. Cal. 2025) ..................................7

*Salley v. Sch. Bd. of Am. Cnty.*, 2021 WL 5760893 (E.D. Va. 2021) ..........................9, 21, 22

*Schaecher v. Bouffault*, 290 Va. 83 (2015) ...................................................................28

*Schmidt v. Household Fin. Corp., II*, 276 Va. 108 (2008)................................................8

*Sestra Sys., Inc. v. BarTrack, Inc.*, 2020 WL 7212581 (W.D. Va. 2020).....................................13

*Snider v. Hostess Brands, LLC*, 2021 WL 311871 (W.D. Va. 2021) ...........................................24

*Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993) ..........................................15

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 239 F. Supp. 3d 77 (D.D.C. 2017) .................................................................................................................8

*Stayart v. Google Inc.*, 783 F. Supp. 2d 1055 (E.D. Wis. 2011) ..............................................30

*Student A v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901 (W.D. Va. 2022) ................................19, 21

*Tharpe v. Lawidjaja*, 8 F. Supp. 3d 743 (W.D. Va. 2014)................................................12

*U.S. Telecom. Ass'n v. FCC (USTA I)*, 825 F.3d 674 (D.C. Cir. 2016)........................................17

*U.S. Telecom Ass'n v. FCC (USTA II)*, 855 F.3d 381 (D.C. Cir. 2017) .................................17, 18

*United States v. Google LLC*, 747 F. Supp. 3d 1 (D.D.C. 2024)......................................14, 25, 26

*United States v. Google LLC*, No. 20-cv-3010 (D.D.C) ................................................14

*United States v. Google LLC*, No. 23-cv-108 (E.D. Va.) ................................................14

*Va. Citizens of Def. League v. Couric*, 910 F.3d 780 (4th Cir. 2018)..............................26, 27, 28

*Verizon v. FCC*, 740 F.3d 623 (D.C. Cir. 2014) ................................................18

*Webb v. Va.-Pilot Media Cos.*, 287 Va. 84 (2014) ................................................27

*West v. Christopher Consultants*, 106 Va. Cir. 6 (2020) ................................................20

*Williams v. Newsweek, Inc.*, 63 F. Supp. 2d 734 (E.D. Va. 1999), *aff'd*, 202 F.3d 262 (4th Cir. 1999) ................................................................................................29

*Zeran v. Am. Online, Inc.*, 129 F.3d 327 (4th Cir. 1997)................................................11

*Zinski v. Liberty Univ., Inc.*, 777 F. Supp. 3d 601 (W.D. Va. 2025) ................................................7

## OTHER AUTHORITIES

42 U.S.C. § 1983................................................................................................4, 7

42 U.S.C. § 2000bb................................................................................................7

42 U.S.C. § 2000bb-1................................................................................................7, 8

47 U.S.C. § 230...................................................................................................1, 8, 10, 11, 12

Federal Rule of Civil Procedure 9(b)...................................................................19, 21, 23

Federal Rule of Civil Procedure 12(b)(6) ....................................................................23

Va. Code § 8.01-40 ..............................................................................................................29

Va. Code § 8.01-61 ..............................................................................................................16

Va. Code § 8.01-243 .............................................................................................................8

Va. Code § 8.01-247.1 ...........................................................................................................8

Va. Code § 46.2-2000 ...........................................................................................................16

Va. Code § 56-122 ...............................................................................................................16

Va. Code § 59.1-198 .......................................................................................................19, 20

## INTRODUCTION

Shortly after Google filed its motion to dismiss Plaintiff's original complaint, he filed an Amended Complaint. But the amendments—principally dropping some claims and adding others—do not rectify the issues Google detailed in its motion. Rather, the Amended Complaint confirms that all of Plaintiff's claims should be dismissed with prejudice.

Plaintiff's Amended Complaint, like the original, is premised on the theory that his website does not rank in Google's search results as prominently as he believes it should—specifically, that Google allegedly has "suppressed" his "biblical voice while amplifying competing Catholic perspectives." ECF No. 22 ("FAC") p. 2. Based on this allegation, Plaintiff asserts a grab bag of a dozen claims ranging from supposed constitutional violations by Google, a private corporation, to a series of state-law causes of action. His claims continue to suffer from a litany of issues. They are barred by statutes of limitations and should be dismissed for multiple other reasons, including:

- The constitutional claims fail because Google is a private entity, not a state actor subject to the Constitution.

- The claim under the Religious Freedom Restoration Act ("RFRA") fails because that federal statute likewise applies only to the federal government, not to a private entity.

- Plaintiff's assorted state-law claims fail because they are barred by the First Amendment since they are predicated on protected speech; they are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230; and they are riddled with a series of other fundamental pleading flaws.

## BACKGROUND

Plaintiff alleges that he operates a website, SpirituallySmart.com, "as his independent platform for sharing spiritual revelations from God" and through which he conducts his "biblical ministry." FAC p. 4, ¶ 23. He further claims that since "at least 2009," Google has "suppress[ed]

1

[his] biblical religious expression while promoting competing institutional religious perspectives" with which he disagrees. *Id.* p. 4, ¶ 2. Plaintiff alleges that Google has done so due to a purported "Vatican partnership" that started in 2009, when the Catholic Church created a YouTube channel. *Id.* ¶ 30. He additionally alleges that he is "obscure[d]" in Google Alerts based on search results, which instead feature other individuals named Tommy or Thomas Richards. *Id.* ¶ 32. Plaintiff claims that he has lost hundreds of millions of dollars in "lost ministry opportunities, speaking engagements, publishing revenue, and religious outreach," *id.* p. 7, but he does not specify what these purported lost opportunities are.

Plaintiff filed his Amended Complaint after Google both responded to Plaintiff's motion for a temporary restraining order (ECF No. 15) and filed a motion to dismiss the original complaint (ECF No. 21). The Amended Complaint abandons Plaintiff's antitrust claims but adds several new state-law claims. Plaintiff did not materially change his factual allegations.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," nor will "naked assertions devoid of further factual enhancement." *Id.* at 678. "[W]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007)).

## ARGUMENT

Plaintiff's claims fail as a matter of law and should be dismissed with prejudice. Plaintiff already has had the opportunity to amend his complaint in response to Google's arguments, and the deficiencies cannot be cured by amendment in any event. *E.g.*, *Jenkins v. Valley Health Sys.*,

2024 WL 3236418, at *6 (W.D. Va. 2024) (dismissing complaint with prejudice where amendment

would be futile); *DataCell ehf. v. Visa, Inc.*, 2015 WL 4624714, at *11 (E.D. Va. 2015) (same).

## I.    THE CONSTITUTIONAL CLAIMS SHOULD BE DISMISSED (COUNTS 1 & 2).

### A.    Plaintiff's Claims Fail Because Google Is A Private Company.

Plaintiff's claims that Google violated his First Amendment rights are fundamentally

misguided.  As explained below, the only constitutional rights implicated by Plaintiff's claims are

Google's.  There is no basis for the assertion that Google, a private entity, violated Plaintiff's

constitutional rights.

The First Amendment indisputably applies only to governmental entities.  *DeBauche v.

Trani*, 191 F.3d 499, 510 (4th Cir. 1999) ("[T]he constitutional protection[] of free speech . . .

appl[ies] only against governmental action, and not against private action[.]").  Accordingly, courts

routinely have dismissed similar allegations of constitutional violations against Google and other

technology companies.  *See, e.g.*, *Prager Univ. v. Google LLC*, 951 F.3d 991, 997 (9th Cir. 2020)

("[A] private entity hosting speech on the Internet is not a state actor."); *Lewis v. Google LLC*, 461

F. Supp. 3d 938, 955-56 (N.D. Cal. 2020) (rejecting claim that Google violated First Amendment

rights); *Casterlow-Bey v. Google Internet Search Engine Co.*, 2017 WL 6876215, at *1 (W.D.

Wash. 2017) ("defendant is not a state actor"); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 631

(D. Del. 2007) (Google is a "private, for-profit" company "not subject to constitutional free speech

guarantees"); *Jayne v. Google Internet Search Engine Founders*, 2007 WL 2852383, at *1 & n.4

(M.D. Pa. 2007) ("There is no valid assertion that [Google's actions are] somehow a violation of

. . . the Constitution.").

Despite expressly acknowledging that Google is a company, FAC ¶ 15, Plaintiff attempts

to conjure the required "State Action" here, *e.g.*, *id.* ¶ 50.  But the Amended Complaint does not

allege any facts that would come close to allowing Google to be treated as a government.

To begin, Plaintiff does not identify any specific cause of action in connection with his constitutional claims.  To the extent Plaintiff is seeking to invoke 42 U.S.C. § 1983, that statute requires action "under color of *state* law" (emphasis added).  Plaintiff's allegations all concern the *federal* government or a *foreign* entity (the Vatican), and "such allegations do not allege conduct under color of *state* law."  *Lewis*, 461 F. Supp. 3d at 955 ("[C]onduct by the federal and foreign governments . . . [is not] conduct under color of *state* law."); *see also e.g.*, *Mays v. Smith*, 70 F.4th 198, 202 (4th Cir. 2023) ("Although § 1983 gives plaintiffs the statutory authority to sue state officials for money damages for constitutional violations . . . there is no statutory counterpart to sue federal officials."); *Antunes v. Rector & Visitors of Univ. of Va.*, 627 F. Supp. 3d 553, 562 (W.D. Va. 2022) (Section 1983 "does not reach . . . actions of the Federal Government.").[1]

Regardless, what Plaintiff alleges is patently insufficient—as a matter of law—to turn Google into a governmental actor.  Plaintiff advances two theories: (1) he asserts there is "government coordination" and "entanglement," such that there is "pervasive . . . 'entwinement'" under *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288 (2001), *see, e.g.*, FAC ¶¶ 50-51; and (2) he cursorily suggests that "Google's search operations constitute performance of a traditional public function, satisfying the public function test for state action under *Marsh v. Alabama*, 326 U.S. 501 (1946)," *id.* ¶ 80.  Both are meritless.

First, under *Brentwood*, there is state action "if, though *only if*, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior '*may fairly be treated as that of the State itself.*'"  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 184 (4th Cir. 2009)

---

[1] If Plaintiff is seeking to invoke *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), that too is wholly unavailing.  *Bivens* liability applies only to federal employees.  The Supreme Court has rejected efforts to expand *Bivens* liability beyond federal employees—even when they are employees of a federally-operated private prison.  *Minneci v. Pollard*, 565 U.S. 118, 131 (2012).  Further, the Supreme Court has rejected efforts to expand *Bivens* liability to cover First Amendment violations at all.  *Egbert v. Boule*, 596 U.S. 482, 498 (2022).

(emphases added) (quoting *Brentwood Academy*, 531 U.S. 288 at 295); *see also Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104, 120 (4th Cir. 2022) (explaining "the specific conduct of which the plaintiff complains" must be "fairly attributable to the state"). In particular, the "'pervasive entwinement' test" that Plaintiff appears to reference "considers whether a private entity has a 'largely overlapping identity' with public institutions and officials." *Respess v. VMI Alumni Ass'n*, 2025 WL 978228, at *7 (W.D. Va. 2025) (citation omitted).

Plaintiff's allegations do not—and cannot—meet that standard. He cites purported "Vatican partnerships" with Google, *e.g.*, FAC ¶ 129, but his Amended Complaint simply refers to the Vatican's decision to launch a YouTube channel, *see id.* ¶ 30—something that is equally available to Plaintiff subject to YouTube's standard terms of service.[2] And in any event, any such "partnership" with the Vatican would not be entanglement with a *U.S.* government entity. Plaintiff further invokes an Executive Order, "Preventing Woke AI in the Federal Government." *Id.* ¶¶ 43, 51, 72-73. But on its face, that Order relates to restrictions on federal government AI procurement announced by the Trump Administration, not some form of governmental control or involvement in Google Search results. Exec. Order No. 14319 (July 23, 2025).[3] Plaintiff also cites an article discussing federal government efforts in the past to address misinformation on social media. FAC ¶ 68. But that article nowhere even mentions Google, nor suggests that religious content was at

---

[2] In fact, Plaintiff appears to have his own YouTube channel to promote the Spiritually Smart website, *available at* https://www.youtube.com/spirituallysmart.

[3] Plaintiff also references an Executive Order titled "Removing Barriers to American Leadership in Artificial Intelligence," FAC ¶ 65, which likewise has nothing to do with controlling Google Search and merely "revokes certain existing AI policies. . . that act as barriers to American AI innovation," Exec. Order No. 14179 (Jan. 23, 2025). And he refers once to another article discussing Google's response to a subpoena compelling the release of basic subscriber information for a user's Gmail account. FAC ¶ 66. The notion that Google's compliance with legal process relating to Gmail in that instance "demonstrat[es] Google's operational integration with federal agencies," *id.*, is meritless. Indeed, as described in Google's Privacy & Terms, Google "carefully review[s] each request [from a government agency] to make sure it satisfies applicable laws" and "in some cases . . . object[s] to producing any information at all." Google Privacy & Terms, *available at* https://policies.google.com/terms/information-requests?hl=en-US.

issue.  Finally, he levels a conclusory allegation that there is "coordination" between Google and "intelligence agencies," *id.* ¶ 47, but neither pleads any facts establishing what this purported link is, nor how it relates to Google's search results.

Second, the "public function" theory of state action applies only "when the state has delegated a traditionally and exclusively public function to a private actor[.]" *Lam v. Shaffer*, 2021 WL 5632085, at *2 (W.D. Va. 2021).  The Amended Complaint contains no facts suggesting that the government delegated any function—let alone a traditionally and exclusively public function— to Google.  As the Fourth Circuit has explained, "the public function test is so carefully confined that it has been found in only narrow circumstances."  *Mentavlos v. Anderson*, 249 F.3d 301, 317 (4th Cir. 2001) (internal quotation marks omitted).  Plaintiff points to *Marsh*—which concerned the operation of a "company *town*," not a "private company."  FAC ¶ 80.  The operation of a company town is wholly dissimilar to the alleged "public function" here, *i.e.*, "hosting speech on a private platform," which is "hardly 'an activity that only governmental entities have traditionally performed.'"  *Prager Univ.*, 951 F.3d at 997-98 (distinguishing *Marsh*); *see also Davison v. Facebook, Inc.*, 370 F. Supp. 3d 621, 628 (E.D. Va. 2019) (explaining the Fourth Circuit has held that "private parties' conduct in organizing, moderating, and sponsoring [speech] were functions that are 'not within the exclusive prerogative of the government.'" (citation omitted)).  Plaintiff's "public function" theory fails.  There is no basis for his constitutional claims.

### B.    Plaintiff's Claims Are Barred by the Statute of Limitations.

Plaintiff's constitutional claims also are time barred.  Throughout his Amended Complaint, Plaintiff alleges that Google's purported conduct has taken place "[s]ince at least 2009."  FAC p. 4.  He emphasizes repeatedly that the alleged conduct started "over 16 years" ago, *id.* p. 5—that "[f]rom 2009 to present, Google has systematically suppressed Mr. Richards' religious content," *id.* ¶ 52; *see also id.* ¶ 2 ("over 16 years"); *id.* p. 7 (damages occurred "over the 16-year suppression

period"); *id.* p. 18 ("The 2009 Triggering Event"). Yet his constitutional claims are subject to a

two-year statute of limitations, regardless of whether Plaintiff is seeking to invoke Section 1983

or *Bivens. See Bethel v. City of Norfolk*, 2016 WL 11672874, at *6 (E.D. Va. 2016) (Section 1983

claim for alleged First Amendment violation subject to a two-year statute of limitations under

Virginia law (citing *Blanck v. McKeen*, 707 F.2d 817, 819 (4th Cir. 1983))); *Ciralsky v. C.I.A.*,

2010 WL 4724279, at *8 (E.D. Va. 2010) (applying two-year statute of limitations to First

Amendment *Bivens* claims). Plaintiff's constitutional claims thus expired more than a decade

before suit was filed on August 22, 2025. ECF No. 1. This independently requires dismissal.[4]

## II.    THE RFRA CLAIM SHOULD BE DISMISSED (COUNT 5).

As with his constitutional claims, Plaintiff's claim under the Religious Freedom

Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, fails because Google is not a government actor.

The RFRA provides that, absent certain exceptions, the "*Government* shall not

substantially burden a person's exercise of religion even if the burden results from a rule of general

applicability." 42 U.S.C. § 2000bb-1 (emphasis added). In other words, by its express terms, the

statute only applies to the "Government." Even Plaintiff concedes: "RFRA Protections Apply to

*Government Action*." FAC ¶ 128 (emphasis added). Courts therefore have held the "RFRA to be

inactionable between private parties." *See, e.g., Zinski v. Liberty Univ., Inc.*, 777 F. Supp. 3d 601,

---

[4] Plaintiff attempts to avoid this result via a conclusory reference in the Amended Complaint to the "continuing violations" doctrine. *See* FAC ¶ 3. Even assuming the doctrine applies, pleading a plausible continuing violation requires that: (1) "the illegal act did not occur just once, but rather 'in a series of separate acts,'" and (2) at least one "separate act" occurred within the limitations period. *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011). "The continuing ill effects of an original violation . . . do not constitute a continuing violation." *Clowdis v. Silverman*, 2019 WL 1415454, at *7 (E.D. Va. 2019) (dismissing claims based on statute of limitations) (quotation marks omitted). Plaintiff makes only vague reference to a continuing violation, which cannot suffice, particularly in light of his repeated claims that the conduct at issue dates back to a "2009 Triggering Event." FAC p. 18. In the antitrust context, courts have rejected attempts to invoke a continuing violation theory based on assertions relating to Google Search algorithms. *See Rumble, Inc. v. Google LLC*, 2025 WL 1455820, at *9 (N.D. Cal. 2025) (collecting cases).

634 (W.D. Va. 2025); *see also Billard v. Charlotte Cath. High Sch.*, 101 F.4th 316, 323 (4th Cir.

2024) ("Neither the Supreme Court nor this court has applied RFRA, which by its terms purports

to limit government action, to a suit between private parties."); *Goddard v. Apogee Retail LLC*,

2021 WL 2589727, at *8 (D. Md. 2021) (dismissing with prejudice RFRA claim against private

party because "[t]his statute places restrictions on the government, not private parties").  Because

Google is not the "Government," 42 U.S.C. § 2000bb-1, this claim must be dismissed.[5]

## III.   THE STATE-LAW CLAIMS SHOULD BE DISMISSED.

Plaintiff's collection of state-law claims similarly fail for multiple reasons: (1) they are all

barred by the applicable statutes of limitations; (2) they are all barred by the First Amendment;

(3) they are all barred by Section 230 of the Communications Decency Act; and (4) they all fail

because Plaintiff does not (and cannot) plausibly allege their elements.

### A.   All Claims Are Barred by the Applicable Statutes of Limitations.

To begin, as discussed above, *supra* pp. 1-2, Plaintiff expressly pleads that the conduct at

issue began in 2009.  Yet he waited *sixteen* years to sue.  As with his federal-law claims, *see supra*

Sections I.B. & II, this substantial and unexplained delay bars each of Plaintiff's state-law claims,

most of which are subject to a two-year statute of limitations or shorter.[6]  Plaintiff's

---

[5] Even assuming a private company like Google could be liable under the RFRA, Plaintiff's claim also fails as he has not plausibly alleged that his exercise of religion has been substantially burdened.  "[S]ubstantial burden" requires "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 99-100 (4th Cir. 2013) (internal marks omitted).  He does not allege (nor could he) that Google required Plaintiff to modify his behavior or that he in fact modified his behavior in violation of his beliefs.  For all the reasons discussed above, the claim further would be barred under the applicable statute of limitations.  *See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 239 F. Supp. 3d 77, 84 (D.D.C. 2017) ("RFRA is subject to a four-year statute of limitations." (citing 28 U.S.C. § 1658)).

[6] *See Lynch v. A & A Exec. Trans. Servs., Inc.*, 2025 WL 1085796, at *3 (W.D. Va. 2025) (applying two-year statute of limitations for common carrier claim under Virginia law); *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 117 (2008) (same for VCPA claim); *Lambert v. Sanofi US Servs., Inc.*, 2024 WL 1608018, at *8 (W.D. Va. 2024) (same for fraudulent misrepresentation claim); Va. Code § 8.01-247.1 (one-year statute of limitations for defamation claim); *see also* Va. Code § 8.01-243(A) (two-year statute of limitations for personal actions for injury to person or property); *id.* § 8.01-248 (same for personal actions for which no other limitation is specified).

tortious/intentional interference and misappropriation claims, which each carry five-year statutes of limitations, are likewise untimely. *See Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 222 (2014) (defining tortious interference limitations period); *Arora v. Sahai*, 2004 WL 3606912, at *3 (W.D. Va. 2004) (dismissing tortious interference claim on statute of limitations grounds); *Moore v. Nat'l Collegiate Athletic Ass'n*, 2022 WL 2306761, at *2 (E.D. Va. 2022) (dismissing misappropriation claim for same reason). So too is his unjust enrichment claim, which carries a three-year limitations period. *East West, LLC v. Rahman*, 873 F. Supp. 2d 721, 730 (E.D. Va. 2012). And the same is true for his civil conspiracy claim, as the limitations period there "is based on the statute of limitations for the underlying act." *Salley v. Sch. Bd. of Am. Cnty.*, 2021 WL 5760893, at *24 (E.D. Va. 2021). Each of Plaintiff's other causes of action are too late. Indeed, Plaintiff has identified no specific tort, defamatory statement, or fraudulent misrepresentation within the limitations period. *Id.* at 25 (dismissing civil conspiracy claim predicated on untimely defamation claim); *Hurst v. State Farm Mut. Auto Ins. Co.*, 2007 WL 951692, at *5-6 (W.D. Va. 2007) (same for claim predicated on untimely fraud claim).

## B.    All Claims Are Barred by the First Amendment.

Even if not time barred, Plaintiff's state-law claims all are barred by the First Amendment because they are predicated on Google's protected speech. These claims all arise out of the allegation that Google has chosen to present content in its search results featuring religious perspectives with which Plaintiff disagrees instead of prominently surfacing his own content. But "[d]eciding on the third-party speech that will be included in or excluded from a compilation— and then organizing and presenting the included items—is expressive activity." *Moody v. NetChoice, LLC*, 603 U.S. 707, 731 (2024). Thus, when online "platforms use their Standards and Guidelines to decide which third-party content [their] feeds will display, or how the display will

be ordered and organized, they are making expressive choices. And because that is true, they receive First Amendment protection." *Id.* at 740.

Consistent with these principles, courts have long held that the selection and display of online search results—including which results to surface, and the order in which they appear, when users enter a query in Google Search—is protected speech. *See Hopson v. Google LLC*, 2023 WL 2733665, at *3 (W.D. Wis. 2023) (dismissing website owner's claim because, inter alia, "the First Amendment bar to plaintiffs proceeding against Google for removing content offered by third parties"); *e-ventures Worldwide, LLC v. Google, Inc.*, 2017 WL 2210029, at *4 (M.D. Fla. 2017) (holding a "search engine is akin to a publisher, whose judgments about what to publish and what not to publish are absolutely protected by the First Amendment"); *Jian Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 435, 438 (S.D.N.Y. 2014) (holding that "the First Amendment protects as speech the results produced by an Internet search engine"); *Langdon*, 474 F. Supp. 2d at 629-30 (dismissing, on First Amendment grounds, lawsuit seeking to compel Google to publish plaintiff's ads prominently in search results).

This conclusion is all the more pronounced here, where Plaintiff's allegation (erroneous as it is) is that Google chose to promote certain religious beliefs over his own religious beliefs. That activity would be at the very core of protected speech. *E.g.*, *303 Creative LLC v. Elenis*, 600 U.S. 570, 584 (2023) ("The framers designed the Free Speech Clause of the First Amendment to protect the freedom to think as you will and speak as you think." (internal quotation marks omitted)).

Google cannot be sued for a disagreement over the ranking of content in Google's search results. Under Plaintiff's own theory of the case, such claims are barred by the First Amendment.

### C.    All Claims Are Barred by Section 230.

All of Plaintiff's claims are independently barred by Section 230 of the Communications Decency Act of 1996, 47 U.S.C. § 230, which "precludes courts from entertaining claims that

would place a computer service provider in a publisher's role," *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).  Put differently, "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content—are barred." *Zeran*, 129 F.3d at 330; *see also M.P. v. Meta Platforms Inc.*, 127 F.4th 516, 524-25 (4th Cir. 2025).  Plaintiff's claims here—which seek to hold Google liable for its decisions about whether (or where) to display Plaintiff's website on Google's search results page—fall within the protections of Section 230.

As an initial matter, Google is unquestionably a computer service provider protected by Section 230.  Courts repeatedly have held that to be the case.  *E.g.*, *Bennett v. Google, LLC*, 882 F.3d 1163, 1167 (D.C. Cir. 2018); *Dowbenko v. Google Inc.*, 582 F. App'x 801, 805 (11th Cir. 2014); *Daniloff v. Google, LLC*, 2023 WL 1103648, at *2 (D. Or. 2023); *Lewis*, 461 F. Supp. 3d at 953-54; *Langdon*, 474 F. Supp. 2d at 631.

Moreover, the alleged conduct that Plaintiff complains of falls within the contours of claims barred by Section 230, as established under Fourth Circuit precedent.  The gravamen of his Amended Complaint is that he disagrees with what third-party content Google includes in its search results and what third-party content Google allegedly "suppresses."  *See, e.g.*, FAC ¶¶ 61, 65, 72.  He is "seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content." *Zeran*, 129 F.3d at 330; *see also M.P.*, 127 F.4th at 526 ("Decisions about whether and how to display certain information provided by third parties are traditional editorial functions" and so Section 230 bars lawsuit based on design of Facebook's algorithm).  In short, the alleged conduct over which Plaintiff sues is "quintessentially related to a publisher's role." *Langdon*, 474 F. Supp. 2d at 631 (barring claims relating to Google's alleged refusal to run plaintiff's ads and display

11

website in search results); *Lewis*, 461 F. Supp. 3d at 954 (barring claims relating to "demonetizing, censoring, restricting and removing" plaintiff's content in YouTube results); *Dowbenko*, 582 F. App'x at 805 (affirming immunity for claims that Google "manipulated its search results to prominently feature" an article disliked by plaintiff). Plaintiff's claims are barred by Section 230.

### D.    The State-Law Claims Fail for Additional Reasons on Their Own Terms.

Plaintiff also fails to plausibly plead the required elements of each of his state-law claims.

### 1.    The Tortious Interference and Intentional Interference Claims Fail (Counts 3 & 12).

Plaintiff's allegations fall far short of stating a claim for tortious interference with business relations or intentional interference with prospective economic advantage (collectively, "tortious interference claim").[7] Under Virginia law, a tortious interference claim requires the plaintiff to plausibly allege: (1) "the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff"; (2) "the defendant's knowledge of the relationship or expectancy"; (3) "a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued the relation or realized the expectancy"; (4) "the defendant employed 'improper methods' in causing the alleged interference"; and (5) "damages to plaintiff." *East West*, 873 F. Supp. 2d at 734-35; *see also Preferred Sys. Sols. v. GP Consulting LLC*, 284 Va. 382, 403-04 (2012). The Amended Complaint fails at each step.

*First*, Plaintiff's allegations do not plead a plausible business expectancy with a third party (element 1). To establish this element, Plaintiff must "allege facts demonstrating *reasonably certain* business opportunities." *East West*, 873 F. Supp. 2d at 735 (emphasis added). Plaintiff does not do this. Indeed, he fails to identify *any* specific opportunity for business with *any* actual

---

[7] Plaintiff's Counts 3 and 12 are duplicative, alleging the same cause of action. *See, e.g.*, *Tharpe v. Lawidjaja*, 8 F. Supp. 3d 743, 771 (W.D. Va. 2014).

party.   Instead, he surmises that, but for Google's alleged conduct, he would have obtained unspecified "religious conference speaking opportunities," "publishing contracts," "ministry donation relationships," and "collaborative [and other] opportunities."   FAC ¶ 110; *see also id.* ¶ 172.   These allegations "fail to raise [his] right to relief above the speculative level."   *East West*, 873 F. Supp. 2d at 735 (dismissing claim for "fail[ure] to plead facts establishing which customer relationships Defendants allegedly interfered with"); *see also Sestra Sys., Inc. v. BarTrack, Inc.*, 2020 WL 7212581, at *8 (W.D. Va. 2020) (dismissing complaint for failure to name any "business or entity with which [plaintiff had] a contract or business expectancy").

*Second*, the Amended Complaint contains no factual allegations that Google plausibly "knew" of any of Plaintiff's expected business relationships (element 2).   Plaintiff's conclusory allegation that "Google knew that its search algorithms directly control content creators' ability to reach their intended audiences," FAC ¶ 173, does not suffice.   This is an independent element requiring dismissal.   *See Sestra Sys.*, 2020 WL 7212581, at *8 (dismissing tortious interference claim for failure to adequately plead defendant's knowledge, among other elements); *Mirafuentes v. Estevez*, 2015 WL 8177935, at *5 (E.D. Va. 2015) (similar).

*Third*, Plaintiff fails to plausibly allege he would have actually attained the unspecified business relationships he asserts were it not for Google's alleged conduct (element 3) or that his asserted damages (element 5) are anything but speculative.   Plaintiff's unsubstantiated hope that some unknown business opportunities could have been available does not suffice.   As "the Supreme Court of Virginia has made clear," the "mere proof of a plaintiff's belief and hope" that a business relationship will materialize "is inadequate to sustain the cause of action."   *Northstar Aviation, LLC v. Alberto*, 332 F. Supp. 3d 1007, 1019 (E.D. Va. 2018) (quoting *Com. Bus. Sys., Inc. v. Halifax Corp.*, 253 Va. 292, 301 (1997)).

*Finally*, Plaintiff fails to plausibly plead "improper means or methods" (element 4).  *See Lokhova v. Halper*, 995 F.3d 134, 148 (4th Cir. 2021) (affirming dismissal of tortious interference claim that was "inextricably tied to [plaintiff's] underlying . . . claims" which were inadequately pleaded (marks omitted)); *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 538 (W.D. Va. 2019) (dismissing tortious interference claim for similar reason).  The only "improper" conduct Plaintiff alleges are the purported "constitutional" violations addressed above, the alleged "fraudulent misrepresentation" addressed below, and the alleged "antitrust" violation that Plaintiff abandoned as a claim when he filed his Amended Complaint.  FAC ¶¶ 114, 174; ECF No. 1 ¶¶ 84-102.  For the reasons provided *supra* Section I and *infra* Section III.D.5., Plaintiff's "constitutional" and "fraudulent misrepresentation" claims fail as a matter of law.  And his invocation of antitrust law concepts, despite dropping his Sherman Act claim, fare no better for all the reasons Google previously explained in its motion to dismiss those originally pleaded claims.  *See* ECF No. 21 at Section I.

In short, Plaintiff sues as the operator of a religious website, alleging Google Search has "suppressed" his content due to alleged favoritism for differing religious perspectives.  Plaintiff's allegations are wholly disconnected from the bases on which Plaintiff relies to establish purported "monopolistic abuse."  FAC ¶¶ 114, 174.  For the latter, Plaintiff depends on extraneous and conclusory quotes from entirely unrelated decisions in *United States v. Google LLC*, No. 20-cv-3010 (D.D.C) and *United States v. Google LLC*, No. 23-cv-108 (E.D. Va.).  *See* FAC ¶¶ 4-5, 43, 56-63, 115.  The District of Columbia case concerns distribution agreements in purported "general search services" and "general search text ads" markets, *United States v. Google LLC*, 747 F. Supp. 3d 1, 32 (D.D.C. 2024); and the Eastern District of Virginia case concerns digital advertising products used for buying and selling ads on publisher websites and mobile applications, *United*

*States v. Google LLC*, No. 23-cv-108 (E.D. Va. Apr. 17, 2025), ECF No. 1410 at § VI.A.1. Plaintiff does not operate a search engine, nor a digital advertising service. He does not compete in the markets for those products, nor does he allege that Google offers any products or services that compete with him. And neither Google's distribution agreements nor its digital advertising products are even alleged to have caused the "suppression" of Plaintiff's website.

Indeed, the alleged "suppression" of Plaintiff's website is not a cognizable anticompetitive conduct under the antitrust laws. The Sherman Act is directed to "conduct which unfairly tends to destroy *competition*." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993) (emphasis added); *Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 173, 175 (4th Cir. 2014) ("[A] defendant must engage in conduct to foreclose competition, to gain a competitive advantage, or to destroy a competitor." (internal quotation marks omitted)). Plaintiff does not assert (let alone plausibly plead) that Google's alleged "suppression" of his religious website was done to attain or maintain a monopoly in the alleged markets for "general search services" and "search advertising."[8]

For each of these independent reasons, Plaintiff's tortious interference claims fail.

### 2.   The Common Carrier Claim Fails (Count 4).

Next, relying on inapposite and conclusory allegations, Plaintiff asserts that Google "functions as a common carrier" and has engaged in purported "common carrier violations." FAC ¶¶ 120, 122. Plaintiff's Amended Complaint does not specify the law under which he is pursuing

---

[8] As explained in Google's motion to dismiss the original Complaint, any antitrust claims would be untimely and barred by the First Amendment, and Plaintiff would lack standing to bring them. *See* ECF No. 21.

these allegations.  *Id.* ¶¶ 119-26.  Nor could he, as no court has found Google Search to be a common carrier.[9]  And for good reason:  Google plainly is not one.

Assuming that Plaintiff is asserting a claim under Virginia's common carriage law, that claim must fail.  In Virginia, a common carrier is "one who, by virtue of his calling and as a regular business, undertakes for hire to transport persons or commodities from place to place," *Bregel v. Busch Ent. Corp.*, 248 Va. 175, 177 (1994) (citation omitted), and does so "indifferently," *Riggsby v. Tritton*, 143 Va. 903, 906 (Ct. App. 1925).  Common carriage law thus typically concerns firms that provide transportation services, such as taxis, buses, railways, and steamboats.  *See Carlton v. Boudar*, 118 Va. 521, 526-27 (1916); *see also* Va. Code § 46.2-2000; *id.* § 8.01-61; *id.* § 56-122.  Google Search is nothing like those firms.  Google does not "carry" anything, nor does it provide its Search service "indifferently."  *See Am. Online, Inc. v. GreatDeals.Net*, 49 F. Supp. 2d 851, 856-57 (E.D. Va. 1999) (granting motion to dismiss common carriage counterclaim against AOL because AOL was not a common carrier).

Google Search is not a service for mere "transport" or "carriage."  Instead, Google Search creates its own product: in response to each individual user's query, it curates information and fashions a bespoke search results page.  *See Ohio v. Google LLC*, No. 21-CV-H-06-0274 (Ohio Ct. Com. Pl. Aug. 15, 2025), Ex. A at 11 ("Google creates its own product when it responds to a user's query.  That 'product' is . . . compiled anew by Google Search for each user from information that Google has mined, organized, and developed.").  Plaintiff does allege otherwise.

---

[9] Instead, Plaintiff relies primarily on Justice Thomas's concurring opinion in *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), *see* FAC ¶¶ 86-87, 89, 93, in which Justice Thomas surmised that "there is clear historical precedent for regulating transportation and communications networks in a similar manner as traditional common carriers," *Moody*, 604 U.S. at 751 (quoting *Biden v. Knight First Amendment Inst. at Columbia Univ.*, 141 S. Ct. 1220, 1222 (2021) (Thomas, J., concurring)).  Justice Thomas's comments do not create a valid cause of action.  Nor does his purported "framework," as set forth in Plaintiff's Amended Complaint (at ¶¶ 86, 120), comport with Virginia or federal law.

Plaintiff also fails to allege what, if anything, Google carries.  That is unsurprising, since Google Search "carries" nothing for common carriage purposes.  To the extent any "carriage" is involved in returning search results to users, that is done by an internet service provider (or "ISP"), not Google Search.  And courts have time and again distinguished Google Search from ISPs, drawing a sharp line between firms like Google that "provide *content* . . . over the internet," and companies that simply "transmit[]" data from one point to another.  *See, e.g.*, *U.S. Telecom. Ass'n v. FCC* (*USTA I*), 825 F.3d 674, 689-91 (D.C. Cir. 2016) (emphasis added) (citations omitted).[10]

Multiple Circuit judges, including then-Judge Kavanaugh, have agreed that companies like "Google, . . . in contrast with broadband ISPs, are not considered common carriers." *U.S. Telecom Ass'n v. FCC* (*USTA II*), 855 F.3d 381, 392 (D.C. Cir. 2017) (en banc) (per curiam) (Srinivasan & Tatel, JJ., concurring); *id.* at 433-35 (Kavanaugh. J., dissenting) (expressing bewilderment at treating Google like a common carrier).  An Ohio state court also recently rejected a request to declare Google Search a common carrier under Ohio law.  *See Ohio v. Google LLC*, Ex. A at 12-13 (holding Google is not a common carrier, in part because any "carriage" is "done by an ISP, not Google Search").[11]

For similar reasons, Google does not offer its service "indifferently."  To the contrary, Plaintiff recognizes that Google's mission is to "organize the world's information and make it universally accessible and useful."  FAC ¶ 120.  Google also endeavors, per the Amended

---

[10] Plaintiff alleges instead that Google should be deemed a common *carrier* because it *organizes* information.  FAC ¶ 120.  Plaintiff's allegation misses the mark.  A common carrier, by definition, must engage in carriage, *Bregel*, 248 Va. at 177, and Google does not.

[11] Likewise, a federal district court recently held that Google's email service, Gmail, is not a common carrier because it does not transport messages from place to place.  *Republican Nat'l Comm. v. Google, Inc.*, 2023 WL 5487311, at *9 (E.D. Cal. 2023); *see also D'Agostino v. Appliances Buy Phone, Inc.*, 2015 WL 10434721, at *18 (N.J. Super. Ct. App. Div. 2016) (Google's terms of service were valid under New Jersey law because, in part, "Google is not a . . . common carrier").

Complaint, to "[d]eliver the most relevant and reliable information available." *Id.* ¶ 17.  In carrying

out these goals, Google necessarily exercises judgment and discretion that is at odds with providing

services "indifferently."  *USTA II*, 855 F.3d at 392 (Srinivasan & Tatel, JJ., concurring) (finding

that Google is not a common carrier that holds itself out as affording neutral, indiscriminate access

to its platform without any editorial filtering); *Ohio v. Google LLC*, Ex. A at 15 ("Google does not

hold itself out as indifferently serving the public or carrying others' products.").

     Plaintiff's claim fails under federal law too.  Indeed, the federal regime governing interstate

communications services expressly declines to treat information services like Google Search as

common carriers.  *See, e.g.*, *Verizon v. FCC*, 740 F.3d 623, 650 (D.C. Cir. 2014) ("[T]he [Federal

Communications] Commission would violate the Communications Act were it to regulate

[information services] as common carriers."); *Cellco P'ship v. FCC*, 700 F.3d 534, 538 (D.C. Cir.

2012) ("[T]he Commission has interpreted [the Act] to exclude providers of 'information

services'" from "the Act's definition of 'common carrier.'" (citations omitted)); *Mozilla Corp. v.

FCC*, 940 F.3d 1, 17 (D.C. Cir. 2019) (per curiam) (noting "'information services' are exempted

from common carriage status"); *USTA II*, 855 F.3d at 392 (Srinivasan & Tatel, JJ., concurring)

(noting Google and like companies "are not considered common carriers").

     Further, for all the reasons discussed *supra* Section III.B., the law *could not* impose

common carrier obligations on Google without invading Google's editorial judgment that is

protected by the First Amendment.  When Google delivers search results, it is engaging in

protected speech, and "freedom of speech prohibits the government from telling people what they

must say."  *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 213 (2013)

(citation omitted).

3.      **The VCPA Claim Fails (Count 6).**

Plaintiff has failed to state a claim under the Virginia Consumer Protection Act ("VCPA"), which requires a plaintiff to allege: "(1) a fraudulent act (2) by a supplier (3) in a consumer transaction." *Student A v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901, 917 (W.D. Va. 2022) (citation omitted). "To succeed on a VCPA claim," a plaintiff must demonstrate "that [the defendant] qualif[ies] as a supplier in a consumer transaction, and they must further demonstrate both a reliance on the misrepresentation and that they suffered damages as a result of the misrepresentation." *Bhutta v. DRM Constr. Corp.*, 2023 WL 3006591, at *5 (E.D. Va. 2023). As a claim sounding in fraud, a VCPA claim also must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b), meaning Plaintiff must "state with particularity the circumstances constituting fraud or mistake, including the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Student A*, 602 F. Supp. 3d at 917 (internal quotation marks omitted). Plaintiff has failed to plausibly allege a single element of the VCPA.

*First*, Plaintiff has "failed to articulate how [Google] fall[s] within the definition of a 'supplier' and how [Google Search] is a 'consumer transaction' under the VCPA." *Bhutta*, 2023 WL 3006591, at *5 & nn.2-3 ("Both 'supplier' and 'consumer transaction' have particular definitions specific to the VCPA."). Plaintiff merely quotes the statute, asserting "Google qualifies as a 'supplier' under Va. Code § 59.1-198 because it 'advertises, solicits, or engages in consumer transactions' by providing search services to Virginia consumers and advertising its information organization capabilities," FAC ¶ 135; "Google's provision of search services constitutes a 'consumer transaction' under Va. Code § 59.1-198 as 'advertisement . . . of goods or services to be used primarily for personal, family, or household purposes,'" *id.* ¶ 136; and Plaintiff "qualifies as a consumer under Virginia consumer protection law through his use of Google's search

19

services," *id.* ¶ 138. These "barebones recitations of the law with no specification as to how the facts alleged in the [Amended] Complaint tie to their VCPA claim" are insufficient. *Bhutta*, 2023 WL 3006591, at *5. "The Court is not required to accept unsupported legal conclusions without facts." *Feeley v. Total Realty Mgmt.*, 660 F. Supp. 2d 700, 711 (E.D. Va. 2009).

Moreover, the Amended Complaint does not allege a cognizable "consumer transaction" under the VCPA. *See* Va. Code § 59.1-198. Providing search results in response to a user's query—particularly one related to religion—is not an "advertisement . . . of goods or services." Even apart from whether there is any "transaction" at issue, Plaintiff's claims are exclusively related to his "advocacy work," FAC ¶ 26, and the loss of "substantial revenue" he would have earned as a religious "content creator," *see, e.g., id.* ¶ 83. Under Plaintiff's own theory of the case, therefore, his claim fails because his use of Google's "search services" were not "primarily for personal, family, or household purposes." *Microsoft Corp. v. #9 Software, Inc.*, 2005 WL 3447965, at *3 (E.D. Va. 2005) (dismissing claim because services at issue were not primarily for personal, family, or household purposes); *Baker v. Elam*, 883 F. Supp. 2d 576, 579 (E.D. Va. 2012) (same). Nor is Google acting as a "supplier" under the statute. Va. Code § 59.1-198 ("Supplier"). A dispute over whether Google should have ranked Plaintiff's religious website higher in search results does not implicate this statute. *See, e.g.*, *Microsoft*, 2005 WL 3447965, at *3 (dismissing VCPA claim where allegations failed to meet "consumer transaction" requirement); *Baker*, 883 F. Supp. 2d at 579 (same).[12]

---

[12] Further, both Virginia and federal courts have rejected efforts to expand the scope of the VCPA based on the statute's remedial intent. *See, e.g.*, *Baker*, 883 F. Supp. 2d at 578 (characterizing the VCPA "as remedial legislation to promote fair and ethical standards of dealings between *suppliers* and the *consuming public.*" (emphasis in original)); *West v. Christopher Consultants*, 106 Va. Cir. 6 (2020) ("While it is true that the VCPA is remedial in nature and thus is to be construed liberally, that does not mean it always should be construed in favor of a plaintiff."); *see also H.D. Oliver Funeral Apartments, Inc. v. Dignity Funeral Servs., Inc.*, 964 F. Supp. 1033, 1039 (E.D. Va. 1997).

*Second*, as discussed *infra* Section III.D.5. in addressing Plaintiff's fraudulent misrepresentation claim (Count 8), Plaintiff has failed to plausibly allege, let alone allege with the particularity required under Rule 9(b), "a fraudulent misrepresentation of fact" as required to state a VCPA claim. *Hamilton v. Boddie-Noell Enters., Inc.*, 88 F. Supp. 3d 588, 591 (W.D. Va. 2015). The VCPA claim fails for this reason just as his fraudulent misrepresentation claim fails.

*Third*, Plaintiff's failure to plausibly allege that he relied on any alleged misrepresentation, *see infra* Section III.D.5., is an independent basis for dismissal of his VCPA claim (just as his fraudulent misrepresentation claim). *See Student A*, 602 F. Supp. 3d at 918 ("Plaintiffs are required to plead reliance and damages as elements of their VCPA claim."); *Fravel v. Ford Motor Co*., 973 F. Supp. 2d 651, 658 (W.D. Va. 2013) (dismissing VCPA claim given absence of "any allegation that [the plaintiff] relied" on alleged misrepresentation).

Accordingly, for all of these reasons, Plaintiff's VCPA claim fails as a matter of law.

### 4.    The Civil Conspiracy Claim Fails (Count 7).

In Virginia, "a plaintiff asserting common law conspiracy must allege that 'two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by criminal or unlawful means.'" *Salley*, 2021 WL 5760893, at *24. The plaintiff also must plead "the existence of [an] underlying cause of action." *Bd. of Dirs. of Lesner Pointe Condo. on Chesapeake Bay Ass'n, Inc. v. Harbour Point Bldg. Corp.*, 2002 WL 32072394, at *8 (Va. Cir. Ct. 2002); *Salley*, 2021 WL 5760893, at *24 ("A conspiracy claim must relate to an underlying tort." (citing *Com. Bus. Sys.*, 253 Va. at 300)). Plaintiff does neither.

*First*, Plaintiff does not plausibly plead a criminal or unlawful agreement. Plaintiff alleges that "Google has conspired with the Vatican and other [unspecified] institutional entities," FAC ¶ 144, to engage in the same alleged conduct that forms the basis of each of Plaintiff's other claims: Google's ranking of some third-party websites higher than or instead of Plaintiff's website. Those

allegations do not suffice.  For the reasons stated above, Google's decisions about whether (or where) to display Plaintiff's website on Google's search results page are neither criminal nor unlawful.  *See Meadows v. Northrop Grumman Innovation Sys., Inc.*, 436 F. Supp. 3d 879, 891 (W.D. Va. 2020) (dismissing civil conspiracy claim for failure to plead unlawful conduct).

Further, the purported "conspiracy" is based on conclusory, irrelevant, and confusing allegations.  *Kissinger-Stankevitz v. Town of Tappahannock*, 750 F. Supp. 3d 590, 624 (E.D. Va. 2024) ("Where there are only vague, conclusory allegations of conspiracy, the claim fails at the threshold" (internal quotation marks omitted)).  As "evidence[]" of the purported conspiracy, Plaintiff first excerpts an out-of-context statement from Google's former CEO that has nothing to do with Plaintiff's website or Google's decisions about whether (or where) to display it.  FAC ¶ 145.  He then points to the "Trump Religious Liberty Commission endorsement" of Cardinal Timothy Dolan and Bishop Robert Barron, which, again, has nothing to do with Google let alone Plaintiff's allegations.  *Id.*  Finally, Plaintiff refers again to the "Vatican partnership," *i.e.*, the Vatican's decision to launch a YouTube channel—but there is nothing "criminal or unlawful" about that.  *See supra* p. 2, Section I.A.

*Second*, and similarly, Plaintiff's Amended Complaint fails to plausibly plead an underlying tort.  His civil conspiracy claim relies on the very same allegations that fail to state a claim under any other count.  *Supra* Sections I, II, III.D.1-3.; *infra* Sections III.D.5-8.  And because those allegations do not give rise to any other cause of action, they cannot support a civil conspiracy claim.  *Lesner Pointe*, 2002 WL 32072394, at *8 ("without proof of the underlying tort, there can be no conspiracy to commit the tort" (quoting *Com. Bus. Sys.*, 253 Va. at 300)); *Salley*, 2021 WL 5760893, at *25 (dismissing civil conspiracy claim predicated on an inadequately pleaded tortious interference claim).

22

### 5.    The Fraudulent Misrepresentation Claim Fails (Count 8).

In support of his fraudulent misrepresentation claim, Plaintiff provides a "formulaic recitation of the elements" with "only labels and conclusions." *Pullen Farm, LLC v. Seedway, LLC*, 2024 WL 1252374, at *2 (W.D. Va. 2024) (internal quotation marks omitted). His conclusory allegations, *see* FAC ¶¶ 150-55, are insufficient as a matter of law to state a claim for fraudulent misrepresentation.

Fraudulent misrepresentation under the law of Virginia requires a plaintiff to plead: "(1) a false representation of material fact; (2) made intentionally (for actual fraud) . . .; (3) reliance on that false representation to their detriment; and (4) resulting damage." *Julian v. Rigney*, 2014 WL 1207980, at *17 (W.D. Va. 2014) (citation omitted). "Allegations of fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b) and be pleaded with particularity, including the identity of the alleged perpetrators and the details of the time and place of the fraud." *Pullen Farm*, 2024 WL 1252374, at *2. And the "[l]ack of compliance with the pleading requirements of Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6)." *Muncy v. Centex Home Equity Co.*, 2014 WL 3359335, at *5 (W.D. Va. 2014).

*First*, Plaintiff has failed to plausibly allege, let alone allege with the particularity required under Rule 9(b), a fraudulent misrepresentation of fact. Plaintiff does no more than assert in conclusory terms that Google allegedly provides "preferential algorithmic treatment" inconsistent with Google's "Honest Results" policy, and that Google allegedly falsely "[c]laim[s] to provide comprehensive alerts about relevant individuals while systematically suppressing notifications about" Plaintiff. *See, e.g.*, FAC ¶¶ 139, 152-53. Plaintiff has not even identified the alleged statements by Google about Google Alerts that purportedly misrepresent the service. And Plaintiff's speculation regarding Google's "Honest Results" policy is insufficient—he "cannot premise a claim on the alleged representation [in the Honest Results policy] because [he] does not

23

make any factual allegations that this representation was false." *Reitz v. CVY of Alexandria, LLC*, 2025 WL 895204, at *6 (E.D. Va. 2025). Here he alleges that the Honest Results policy promises no "special treatment such as ranking boosts or specialized support based on personal or financial relationships.'" FAC ¶ 152. But no well-pleaded facts in his Amended Complaint contradict that.

*Second*, Plaintiff likewise fails to allege sufficient facts to establish Google's purported *knowledge* of the falsity of any statement. Plaintiff asserts that knowledge of falsity is "evidenced by its documented exclusive Vatican partnerships since 2009, systematic suppression of Vatican-critical content, and preferential algorithmic treatment for Catholic institutional perspectives." *Id.* ¶ 153. But, again, the alleged "exclusive Vatican partnership" simply refers to the Vatican's decision to launch a YouTube channel. The mere existence of that channel does not "violat[e] Google's 'Honest Results' policy promising no 'special treatment based on personal or financial relationships.'" *Id.* ¶ 139. And, again, there are no well-pleaded facts in the Amended Complaint contradicting any portions of the Honest Results policy.

*Third*, with respect to reliance and damages, Plaintiff merely asserts that he "relied on these representations . . . suffering damages exceeding $544 million." *Id.* ¶ 155. This conclusory assertion is insufficient as a matter of law. *Muncy*, 2014 WL 3359335, at *6 (dismissing claim where plaintiff "presented conclusory allegations in support of the[] claims for false statements"); *see also Julian*, 2014 WL 1207980, at *17-19 (same). Conspicuously absent from his amendment is any allegation about if/when Plaintiff saw the allegedly false statements. *See Devansky v. Dryvit Sys., Inc.*, 52 Va. Cir. 359 (2000) (no reliance where plaintiffs failed to allege when they saw false statements); *Snider v. Hostess Brands, LLC*, 2021 WL 311871, at *4 (W.D. Va. 2021) (same).

### 6.    The Unjust Enrichment Claim Fails (Count 9).

To recover on an unjust enrichment theory under Virginia law, a plaintiff must show: "(1) [the plaintiff] conferred a benefit on the other party; (2) the other party had knowledge that

the claimant was conferring the benefit; and (3) the other party accepted the benefit under circumstances that render it inequitable for him to retain the benefit without paying for the value he received." *Odyssey Imaging, LLC v. Cardiology Assocs. of Johnston, LLC*, 752 F. Supp. 2d 721, 724-25 (W.D. Va. 2010). The complaint "must plead facts that establish more than a conceivable claim, it must plead facts showing a plausible claim." *Id.* at 725 (dismissing unjust enrichment claim "scant on facts"). Plaintiff fails to do so here.

To start, Plaintiff fails "to allege facts showing that [he] 'conferred a benefit' on Google for which Google 'should reasonably have expected' to repay." *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 166 (4th Cir. 2012). According to Plaintiff, Google has purportedly "derived *substantial* advertising revenue from users accessing Richards' content through Google's platform." FAC ¶ 158 (emphasis added). But this theory is contradicted by his own allegations: that Google purportedly has engaged in "systematic suppression" of his content, *e.g.*, *id.* pp. 6, ¶¶ 3, 46, resulting in Plaintiff's website "reciev[ing] virtually no traffic from Google searches," *id.* ¶ 53. Such "inconsistent and self-contradictory statements . . . fail[] to state a claim." *Arkansas Nursing Home Acquisition, LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621, 637 (D. Md. 2020); *see also Cadmus v. Williamson*, 2016 WL 1047087, at *10 (W.D. Va. 2016) (holding that "failures to allege consistent theories of relief may well result in dismissal").

In any event, the claim also fails because Plaintiff "has not alleged *facts* supporting [his] general assertion that Google" earned advertising revenue from Plaintiff's website. *Rosetta Stone*, 676 F.3d at 166. It is unclear what Plaintiff even means by that assertion.[13] Likewise, for similar

---

[13] Plaintiff's theory appears to be premised on the (incorrect) assumption that Google monetizes every query by delivering search advertisements, but the vast majority of queries are not monetized. *United States v. Google LLC*, 747 F. Supp. 3d 1, 40-41 (D.D.C. 2024). Moreover, even if Plaintiff's website appeared in search results that included advertisements, that does not mean the mere fact that Plaintiff's website was in the results was what triggered the display of advertising. Plaintiff does not, and cannot, plead this. Google's

reasons, Richards pleads no facts to support the assertion that Google "accepted the benefit under circumstances that render it inequitable for him to retain the benefit without paying for the value he received." *Odyssey Imaging*, 752 F. Supp. 2d at 724-25. There is no basis for suggesting that it is "inequitable" for Google to earn advertising revenue from search results that appear on the same results page as a link to Plaintiff's website, among the many other results listed. After all, according to Plaintiff's own allegations, he obtains benefits when his website is included in Google's search results. And it is well known that a website operator can opt out of appearing in Google's search results should it wish to do so. Google publishes public instructions on how to do so.[14]

### 7. The Defamation by Implication Claim Fails (Count 10).

Plaintiff's defamation by implication claim should be dismissed because it fails to identify any specific statement that is alleged to be libelous, let alone one that is *actionable*. *See* FAC ¶¶ 161-65. In Virginia, the elements for a defamation claim are "(1) publication of (2) an actionable statement with (3) the requisite intent." *Va. Citizens of Def. League v. Couric*, 910 F.3d 780, 783 (4th Cir. 2018) (quoting *Schaecher v. Bouffault*, 290 Va. 83 (2015)). Plaintiff's claim— that Google should be liable for defamation based on where or whether Plaintiff's content ranked in unspecified search results—fails as a matter of law for multiple reasons.

*First*, as a threshold matter, Plaintiff has not identified any statement that he alleges was defamatory, let alone who that statement allegedly was communicated to. Instead, Plaintiff points

---

decisions about what advertisements to display are based on the user's query, not the results displayed. *Id.* at 62.

[14] *See* Google Search Central, "Block Search Indexing with noindex," https://developers.google.com/search/docs/crawling-indexing/block-indexing; *see also* Google Search Central, "Introduction to robots.txt," https://developers.google.com/search/docs/crawling-indexing/robots/intro.

broadly to Google's purported decisions over a 16-year period about whether (or where) to display Plaintiff's website in unspecified Google Search results in response to unspecified user queries. FAC ¶ 162. "[P]ublication" is the first element of a defamation claim, *Va. Citizens*, 910 F.3d at 783, and Plaintiff must identify the allegedly defamatory statements over which he sues. *See Compel v. Citi Mortg. Inc.*, 2005 WL 4904816, at *1 (E.D. Va. 2005) (dismissing defamation claim for failure to "identify which specific statements plaintiff considers defamatory or libelous"). He does not, and the mere ordering of links in search results cannot be an actionable defamatory *statement* as a matter of law.

*Second*, regardless, it is unreasonable to draw an implication that Google suggested Plaintiff to personally be "less authoritative or trustworthy as a religious commentator," FAC ¶ 162, based only on where or whether certain websites ranked on a search results page in response to a given user's query. When facing an implication claim, a court must perform the "essential threshold, gatekeeping function" of determining whether a purportedly defamatory implication may "be reasonably drawn from the words actually used." *Webb v. Va.-Pilot Media Cos.*, 287 Va. 84, 89-91 (2014). That is, a court "must decide as a threshold matter of law whether a statement is reasonably capable" of a "defamatory meaning," and "may not extend the meaning of the words used beyond their ordinary and common acceptance." *Va. Citizens*, 910 F.3d at 784 (internal quotation marks omitted). Here there is no basis to draw any implication about Plaintiff's personal religious authoritativeness or trustworthiness based simply on the ranking of websites for a given search query. That would stretch the law of defamation far beyond any reasonable limit. *See, e.g.*, *Nexus Servs., Inc. v. Vance*, 2018 WL 542977, at *5 (W.D. Va. 2018) (statement "cannot be 'naturally and presumably' construed as charging [plaintiff] with a crime"); *Morrissey v. WTVR, LLC*, 432 F. Supp. 3d 617, 624 (E.D. Va. 2020) (statement does not "support a reasonable

implication of racist overtone"). In fact, to the extent Plaintiff seeks to sue over search results that do not mention him, it is unclear how any implication could even be "of and concerning" him at all—another element of the claim. *See, e.g.*, *Schaecher*, 290 Va. at 99-100; *Blatty v. N.Y. Times Co.*, 42 Cal.3d 1033, 1042, 1046 (1986) (affirming dismissal of claim based on failure to include author's book on "best seller" list because list was not "of and concerning" him).

*Third*, if there even is any implication to be drawn about Plaintiff from the ranking of websites in search results, it would not rise to the level of being *defamatory*. To be actionable, a plaintiff's "[r]eputation must be affected to a magnitude sufficient to render [him] odious, infamous, or ridiculous, or subject to disgrace, shame, scorn, or contempt." *Id.* at 101; *see also, e.g.*, *Va. Citizens*, 910 F.3d at 787 (affirming dismissal of claim because footage did "not rise to the level of defamation"); *Dragulescu v. Va. Union Univ.*, 223 F. Supp. 3d 499, 511 (E.D. Va. 2016) (dismissing claim because proffered implication was not defamatory). Even accepting Plaintiff's alleged implication that he is "less authoritative or trustworthy" than some other religious commentators, it does not rise to the level of being defamatory.

*Fourth*, the implication must not only be defamatory, but also an *objectively false statement of fact*. This is a question of law for the court to decide. *Olgiati v. Breitschmid*, 708 F. Supp. 3d 805, 809-11 (W.D. Va. 2023). Expressing "a subjective view, an interpretation, a theory, conjecture or surmise, rather than a claim to be in possession of objectively verifiable false facts . . . *is not actionable*." *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 186 (4th Cir. 1998) (emphasis added) (internal alterations omitted). What Plaintiff asserts here—that Google implied he was "less authoritative or trustworthy as a religious commentator," FAC ¶ 162—would be a prototypical expression of subjective opinion, not actionable under libel law. "[S]tatements [that] are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion."

28

*Dragulescu*, 223 F. Supp. 3d at 507 (citation omitted); *see also, e.g.*, *Gibson v. Boy Scouts of Am.*, 163 F. App'x 206, 212-13 (4th Cir. 2006) (stating that plaintiff was "unfit" to be a Scoutmaster was subjective opinion); *see also Icon Health & Fitness, Inc. v. Consumer Affairs.com*, 2017 WL 2728413, at *9 (D. Utah 2017) (holding "star-rating systems" constitute opinions not actionable under defamation law, and collecting cases concluding the same).

For all of these reasons, Plaintiff has failed to state a claim for defamation by implication.

### 8.    The Virginia Misappropriation Claim Fails (Count 11).

Virginia Code Section 8.01-40 codifies the misappropriation of a plaintiff's name or likeness for advertising or trade purposes and creates a cause of action to "prevent and restrain the use thereof."  Va. Code § 8.01-40.  The use of names or images in matters that are "newsworthy" or of "public interest" are not "considered to be for advertising purposes or in trade." *Williams v. Newsweek, Inc.*, 63 F. Supp. 2d 734, 736 (E.D. Va. 1999), *aff'd*, 202 F.3d 262 (4th Cir. 1999). Similarly, "there is an exception to the statute for uses that are 'incidental' to the purpose of the work."  *Id.* at 737.  Plaintiff's allegations fail to state a claim.

Plaintiff "has failed to plead any non-conclusory allegations that specifically demonstrate his likeness was . . . used for advertising or trade purposes." *Moore*, 2022 WL 2306761, at *2.  He offers only the bald assertion that "Google used Richards' name, identity, and digital persona without written consent for advertising purposes and purposes of trade by systematically indexing and monetizing his content while misrepresenting his identity through algorithmic manipulation." FAC ¶ 167.  Nowhere does Plaintiff identify any Google advertisement (or any third-party advertisement found on Google search results pages) where Plaintiff's name or likeness was used in conjunction with the advertisement.  Courts have summarily dismissed Section 8.01-40 claims premised on similar "allegations [that] amount to nothing more than a bare recitation of the

elements of [the] cause of action." *See, e.g.*, *Gill v. Food Lion, LLC*, 2025 WL 444764, at *7 (W.D. Va. 2025); *Moore*, 2022 WL 2306761, at *2.

As discussed *supra* Section III.D.6., Plaintiff does not allege any facts that show Google ever *advertised* Plaintiff's own website. At most, Google generated a list of search results that may have included a link to Plaintiff's website among many other websites. *See Stayart v. Google Inc.*, 783 F. Supp. 2d 1055, 1057 (E.D. Wis. 2011) (dismissing misappropriation claim under Wisconsin law because plaintiff failed to plausibly allege "Google used [plaintiff's] name for advertising or trade purposes" where the "allegations establish[ed] no more than that Google enables internet users to access public[l]y available materials connected to plaintiff's name").

Further, as with his unjust enrichment claim, Plaintiff's own allegations undermine his own claim. *See supra* Section III.D.6. The thrust of Plaintiff's allegations is that Google *fails* to show his content in search results—*that is, that Google should be "misappropriating" his content more frequently*. As confirmed by the allegations in this count, Google supposedly "suppress[es] his visibility" and "artificially promot[es] lesser-known individuals" instead of Plaintiff. FAC ¶¶ 168-69. This contradicts the premise of his misappropriation claim.

## CONCLUSION

For the foregoing reasons, Plaintiff's claims should be dismissed with prejudice.

Dated:   October 3, 2025                     Respectfully submitted,

                                             /s/ *Sean M. Douglass*
                                             John E. Schmidtlein, *pro hac vice*
                                             Stephen J. Fuzesi, *pro hac vice*
                                             Sean M. Douglass (VSB No. 83835)
                                             WILLIAMS & CONNOLLY LLP
                                             680 Maine Avenue S.W.
                                             Washington, DC 20024
                                             Telephone: (202) 434-5000
                                             Facsimile: (202) 434-5029

jschmidtlein@wc.com
sfuzesi@wc.com
sdouglass@wc.com

*Attorneys for Google LLC*

## CERTIFICATE OF SERVICE

I hereby certify that the following document was filed on this 3rd day of October 2025 with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are registered on CM/ECF.

/s/ *Sean M. Douglass*
Sean M. Douglass