EXHIBIT A

IN THE COURT OF COMMON PLEAS, DELAWARE COUNTY, OHIO

STATE OF OHIO ex rel. DAVE YOST, :
:
    Plaintiff, :
: Case No. 21-CV-H-06-0274
vs. :
: JUDGE JAMES P. SCHUCK
GOOGLE LLC, :
:
    Defendant. :

## OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Before the Court is the State of Ohio's request for declaratory judgment seeking to classify Defendant Google LLC ("Google") as a common carrier under Ohio law based on its operation of the Google Search engine. For the reasons set forth below, the Court finds that Google Search does not meet the definition of a common carrier under Ohio law and accordingly denies Plaintiff's requested relief. Accordingly, the Court grants Google's motion for summary judgment and denies the State of Ohio's motion for summary judgment.

### II. THE MATERIAL UNDISPUTED FACTS

#### How Google Search Operates

1. Google states its mission is to "organize the world's information and make it universally accessible and useful." [Aff. of Pandu Nayak ¶ 6; Ex. 1 at -0623.]

2. In August of 2022, Google Vice President Dr. Pandy Nayak posted on Google's website, "We're determined to keep doing our part to help people everywhere find what they're looking for and give them the context they need to make informed decisions about what they see online." [State's Ex. 5 at -0683.]

3. Google Search's goal is to provide relevant, high quality information in response to user queries, in order to satisfy that user's information needs. [Nayak Dep. at 21:12-22:6.]

4. Google mines information from a variety of sources and from that information creates indices to organize the information it has acquired. It selects information from the indices to create a search results page ("SRP") that provides information to users in response to their queries. [Nayak Dep. at 14:5-15:1; Nayak Aff. ¶ 7.]

5. One way Google acquires content is by "crawling" certain webpages on the internet. While the internet contains over 100 trillion webpages, Google's systems "crawl" only webpages that will likely be useful to users. [Nayak Dep. at 48:10-49:5; Reid Dep. at 142:20-143:8.]

6. Google's systems then make a copy of the information they discover without disturbing or hosting the webpages themselves. [Bonatti Dep. at 96:21-23.]

7. That copied information is then processed by Google and stored in its web index—a database designed and maintained by Google. [Nayak Aff. ¶ 11; Bonatti Dep. at 87:14-18.]

8. Google does not index the web indiscriminately. [Nayak Dep. at 16:22-18:5; Mueller Dep. at 81:24-82:2.] It includes information about webpages in its web index at its sole discretion, and whether it does so is based on its judgment about what information is likely to be useful to users. [Nayak Dep. at 16:22-18:5; Bonatti Dep. at 88:2-8.]

9. Google's judgment about what information to include in its index is guided by various factors, including the content and quality of a page, the freshness of a page's content, and whether the page constitutes spam. [Nayak Dep. at 16:22-18:5; 18:10-19:21; Mueller Dep. at 82:3-17; State's Ex. 26 at -644.]

10. Google does not guarantee that webpages will be crawled or that certain information will appear among any search results. Those decisions are within Google's discretion. [Bonatti Dep. at 111:18-22; Nayak Aff. ¶ 13.]

11. In 2007, Google Search transitioned to a "universal search," which involved including different types of units, such as videos, images, and local results, on the same SRP alongside web results, in dynamic positions on the SRP. [Reid Dep. at 127:16-128:5.]

3

12.     To support these other units, Google has other indices in addition to the web index, and it acquires content for these indices in a variety of ways beyond crawling of webpages. [Reid Dep. at 19:4-20:2; 66:12-67:6; Bonatti Dep. at 77:8-19.]

13.     In response to a user's query, Google creates a SRP that responds specifically to that query. [Bonatti Dep. at 77:3-5, 82:9-12.]

14.     To fulfill a query, Google begins by using its query understanding systems to interpret and understand the user's query and discern the user's information need. [Google Ex. 1-F at -4027 and -4028.]

15.     After it has interpreted the user's query, Google uses a collection of sophisticated algorithms to identify responsive information in the databases that it maintains on its servers based on what it believes may satisfy the user's information need. [*Id.* at -4030, -4031, -4052; Bonatti Dep. at 82:25-83:3.]

16.     Google utilizes an automated ranking system to determine the order in which search results will be displayed. Google designs its ranking system to favor pages that are likely to contain useful, high-quality content. [State's Ex. 27 at -652; State's Ex. 6 at Response 27.]

17.     Google orders or ranks results in a way that "ensures the most helpful and reliable information rises to the top." [State's Ex. 26 at -644.]

18.     As Google can display the information it selects in a variety of forms, Google evaluates how the relevant information fits together and what the best format

4

likely is to display that information. This includes whether and where to display certain units on the SRP, based on considerations of relevance and usefulness. [Google Ex. 1-C at -1026-1027; Google Ex. 1-F.]

19. Google ranks the retrieved search results based on many factors, including relevance of the search result to the intent of the query, the quality of the search result, the user's location, the type of device the user has, prior queries, and the user's language. [Nayak Dep. at 113:8-115:9, 88:18-89:4, 93:14-97:2; Google Ex. 1-H.]

20. Google selects a maximum of 400 search results in response to a query. So a user does not see all of the other millions of search results that may relate to a particular query. [Nayak Aff. ¶ 16.]

21. In order to better respond to user queries, Google has added a number of different search features to its SRP. For instance, Knowledge Panels, which contain information from Google's Knowledge Graph, may appear on the SRP when a user searches for certain people, places, organizations, or things that are in the Knowledge Graph database, and are designed to organize useful information about the particular entity. [Google Ex. 1-J; Google Ex. 1-E at -3745; Reid Dep. at 113:10-13.]

22. Answer Cards, which provides a "onebox" containing a direct answers to user queries, are a feature that may appear on the SRP. [Google Ex. 1-E at -3746.]

23. Google has also created several specialized units, such as Local and Travel, that are designed to satisfy a user's query. [Reid Dep. at 19:4-20:2.] These units

5

may pull information from a variety of sources, including crawled webpages, licensed data, Google Maps data, and user generated content. [Nayak Dep. at 53:22-54:10, 66:12-67:6.]

24. Google's SRP also may include "snippets" or "featured snippets." Snippets are designed to preview the page content that best relates to a user's specific search, and Google displays featured snippets when it determines this format will help people more easily discover what they're seeking. [Google Ex. 1-K.]

25. A variety of user-specific factors affect the content and presentation of information that Google chooses to include on the SRP for a user, including the user's location, the time of day the user submits the query, the user's immediate prior queries, user settings such as SafeSearch, and the user's language. [Bonatti Dep. at 93:21-24.]

**How Google Search Interfaces With Users**

26. Google provides its search engine to all comers. [Nayak Dep. at 25:9-11.] It does not require a user to have an account or register with Google in order to enter a query. [Reid Depo. at 32:20-33:3; Caillette Dep. at 106:17-23.]

27. Google does not place any restrictions on the content of a user's search query. [Reid Dep. at 38:6-18.]

28. Google Search is not an Internet Service Provider ("ISP") that carries data on cable, wireless, or other connections. [Majure Dep. at 175:3.]

29. A user can only access Google Search via an ISP, which transmits the user's query over the internet to Google. [Nelson Dep. at 19:8-15; Bonatti Dep. at 94:13-18.]

30. An ISP is a separate company, such as a mobile carrier (i.e. Verizon) or cable provider (i.e. Spectrum) that provides access to the internet by transmitting data through networks from one place to another. [Nayak Aff. ¶¶ 18-19.]

31. Google then conducts a process to create the SRP. [Google Ex. 1-F; Google Ex. 1-N, at -0801, -0832-0833.]

32. Once Google creates the SRP for a user, the data necessary to render that SRP on the user's device is handed off by Google to an ISP for transmission to the user. [Nayak Aff. ¶ 17; Bonatti Dep. at 96:1-3; Reid Dep. at 154:23-155:24.]

33. The ISP transmits the data over networks from Google Search to the user; Google does not own those networks or control how an ISP carries information across the networks. [Nayak Aff. ¶ 19.]

34. Subject to a few exceptions for searches that threaten the well-being of others and of Google's service, Google Search responds to all queries. [Google's Terms of Service at 19.]

35. If the user clicks on a link in the Google SRP, the user's browser and ISP, not Google Search, connect the user to the website. [Bonatti Dep. at 75:6-8.]

7

36. A web user may use his ISP to enter a website's URL and navigate to that site without starting from a Google SRP. [Bonatti Dep. at 96:18-20.]

## How Google Search Generates Revenue

37. Google Search is free to its users. It does not charge users for submitting a query on Google Search. Users cannot pay to receive any particular result or to receive a different order of results than Google chooses to show.

38. Websites cannot pay Google to crawl their page or rank it highly on the SRP, and does not guarantee it will crawl, index, or serve a webpage. [Bonatti Dep. at 86:25-87:2; 116:19-117:1; Google Ex. 1-L at -3521.]

39. No one has paid for the results Google presents to a user on an SRP, and any inclusion has been determined by Google on the basis of its proprietary ranking criteria, unless denoted as an "Ad" or as "Sponsored." [State's Ex. 28 at -0633.]

40. Rather, Google Search generates revenue for Google through the sale of advertisements, which may appear alongside relevant search results on SRPs displayed to users. [State's Ex. 30 at -0059.]

41. Google Search does not show ads on every SRP. Whether Google Search shows an advertisement on an SRP is based on a number of factors, including the amount of the potential advertiser's bid, and Google's determination of the ad quality and usefulness to users. [Bonatti Dep. at 87:3-8.]

42. Thus, Google does not promise or guarantee to even the highest bidding advertiser that its advertisement will be displayed on a Google SRP. [Bonatti Dep. at 102:4-7.]

43. Apart from this direct revenue, Google Search relies on users' searches to develop a constantly evolving understanding of language, the web, and human behavior that it uses to better refine its search tool. [State's Ex. 32 at -7516.]

**Users May Choose to Use Other Search Engines and Websites**

44. Google Search is not the only general search engine available to individuals in Ohio. Other options include Bing and DuckDuckGo. Yet, Google dominates the search engine market. Its search usage far exceeds the searches performed by its nearest competitors—Bing, Yahoo, and DuckDuckGo—combined. [State's Ex. 43.]

### III.  APPLICABLE STANDARD

A trial court must grant summary judgment when the Civ.R. 56(C) evidence demonstrates no genuine issues of material fact remain to be litigated and the movant is entitled to judgment as a matter of law. The court is required to construe the evidence and resolve all inference in the light most favorable to the non-moving party.

The movant has the initial burden of "showing that no genuine issue of material fact exists." *Byrd v. Smith*, 110 Ohio St.3d 24, 26 (2006). Once the movant meets his

burden, the burden shifts to the non-moving party to identify genuinely disputed and material facts that must be resolved by the finder of fact at trial. *Id.* at 27.

IV. **LAW AND ANALYSIS**

Under Ohio law, a common carrier is one who undertakes for hire to transport persons or property, and holds itself out to the public as ready and willing to serve the public indifferently and impartially to the limit of its capacity. *Columbus-Cincinnati Trucking Co. v. Pub. Utilities Comm'n*, 141 Ohio St. 228, 231-32 (1943) ("A common carrier is one who holds himself out to the public as engaged in the business of transporting persons or property from place to place, for compensation, offering his services to the public generally . . . [and] he undertakes to carry for all people indifferently"); *Celina & Mercer Cty. Tel. Co. v. Union Ctr. Mut. Tel. Assn*, 102 Ohio St. 487, 492 (1921); *Kinder Morgan Cochin LLC v. Simonson*, 2016-Ohio-4647, ¶ 33.

The Court finds that two characteristics of common carriage are particularly dispositive on these undisputed facts.

A. **Google Search Does Not Transport Property.**

To meet the "carrier" requirement under Ohio law, one must undertake to transport persons or property for hire. *Kinder Morgan* at ¶ 33. Common carriers necessarily receive either people or property and move them "from place to place." *Id.*

Google Search does not satisfy this element. Google Search plainly does not transport people. And the evidence shows it does not transport products for others.

10

Assuming arguendo a search result constitutes property or a product, Google Search creates its own product when it responds to a user's inquiry. That "product" is a SRP, which is compiled anew by Google Search for each user from information that Google has mined, organized, and developed.

This stands in stark contrast to other types of recognized common carriers. For instance, in *Kinder Morgan*, a pipeline moved petroleum from Ohio to Canada. It was determined to be a common carrier because it moved those products from one place to another. *Id.* at 34. It did not create a product; it moved a product.

In *McVey v. Cincinnati*, 109 Ohio App.3d 159, 163 (1st Dist. 1995), the City of Cincinnati was a common carrier of persons by virtue of installing escalators near Riverfront Stadium that were used to move the general public during sporting events. Cincinnati did not create a product; it moved people.

Moving people or the product of others is the *sine qua non* of a common carrier. *Norman v. Thomas Emery's Sons, Inc.*, 7 Ohio App.2d 41 (1966) ("a passenger elevator is classified as a common carrier"); *Tinkham v. Groveport-Madison Local Sch. Dist.*, 77 Ohio App.3d 242, 247-48 (1991) (taxicab company was a common carrier); *Brinkmoeller v. Wilson*, 41 Ohio St.2d 223, 225-26 (1975) (operators of taxicabs for hire are common carriers); *Missouri Pac. Ry. Co. v. Larabee Flour Mills Co.*, 211 U.S. 612, 619 (1909) (a railroad company was a common carrier in part because it "engaged in the business of transferring cars from the Santa Fe track to industries located at Stafford.").

11

The State of Ohio argues Google Search carries information for others. But that carriage is done by an ISP, not Google Search—a fact the State concedes. A user's query arrives at Google Search via an ISP, and once Google Search creates a SRP, it relays that SRP to an ISP and the ISP then delivers the SRP to the user. [Bonatti Dep. at 75:6-8.] It is undisputed that, without an ISP, Google Search could not deliver any search results in response to a user's inquiry.

It is also noteworthy that Google Search has not been regulated as a common carrier under federal law. ISPs have been. *U.S. Telecom Ass'n v. FCC* ("*USTA I*"), 825 F.3d 674, 743 (D.C. Cir. 2016) (upholding the Federal Communications Commission's classification of broadband ISPs as common carriers under the Communications Act in part because ISPs are capable of transmitting data to and from all internet endpoints); *U.S. Telecom. Ass'n v. FCC* ("*USTA II*"), 855 F.3d 381, 392 (D.C. Cir. 2017) (distinguishing between those that "provide content . . . over the internet," and those that simply "transmit[]" data from one point to another); *see also Rep. Nat'l Comm. v. Google, Inc.*, 2023 WL 5487311, at *9 (E.D. Cal. Aug. 24, 2023) (observing that "[u]nlike a traditional mail service, email services, like Google's Gmail, do not 'carry' messages," as emails are "transform[ed] . . . into 'packets' that are sent through the internet via computers on the network, and periodically reassembled and repacketized by intermediate computers on the network").

The Court therefore finds that the State of Ohio is unable to demonstrate that Google Search transports property for others.

### B. Google Does Not Hold Itself Out as Indifferently Providing Search Results.

A common carrier must also hold itself out to the public as ready and willing to serve the public indifferently. *Kinder Morgan*, 2016-Ohio-4647 at ¶ 33; *Scofield v. Lake Shore & M. S. R. Co.*, 43 Ohio St. 571, 605 (1885) ("Common carriers are bound to carry indifferently . . . ."); *State ex rel. Kohler v. Cincinnati, W. & B. Ry. Co.*, 47 Ohio St. 130, 138 (1890) ("As common carriers, their duty is to carry indifferently . . . ."). The undisputed evidence shows the State of Ohio is unable to prove that Google Search treats each of its users indifferently.

It is undisputed that Google services the public at large by providing information in response to queries from virtually all of its users. But if the State of Ohio is correct that Google's unfettered provision of information constitutes carriage, then that carriage is not performed indifferently.

The undisputed evidence reflects that Google exercises judgments about crawling, indexing, and ranking webpages. It does not guarantee that all or certain webpages will be crawled. [Bonatti Dep. at 111:18-22; Nayak Aff. ¶ 13.] When a user makes a query, Google creates and returns a unique SRP. What that SRP looks like and what its contents are depend on a range of factors. [Nayak Dep. at 16:22-18:5; 18:10-19:21; Mueller Dep. at 82:3-17.] These are factors Google controls and balances. [Nayak

13

Dep. at 16:22-18:5; Bonatti Dep. at 88:2-8.] *See USTA II*, 855 F.3d at 392 (noting Google and other web platforms such as Twitter and Facebook are not common carriers that hold themselves out as affording neutral and indiscriminate access to their platforms without editorial filtering).

The State of Ohio argues that the relevant inquiry is not whether Google makes individualized decisions when it returns a SRP, but rather that it returns a SRP to any member of the public who makes a query. But Google does not hold itself out as carrying indifferently. Rather, Google proclaims it differentiates in what it delivers—search results.

A common carrier does not select the person or product it carries; it carries all people and products without regard to who or what they are. *See Columbus-Cincinnati Trucking Co.*, 141 Ohio St. at 232 (holding a trucking company that independently selected the films it would deliver to customers was not a common carrier); *see also Allaman v. Pa Pub. Util. Comm'n*, 27 A.2d 516 (Pa. Super. Ct. 1942) (a company that selected coal from its own supply to deliver to customers was not a common carrier).

Conversely, Google at each stage of the process selects what information users will and will not see. Google crawls the web, indexes webpages, and then selects which results to include in a SRP. So even if Google were transporting a product of "information," that product would be one Google itself has designed.

14

The Court finds that the undisputed evidence reflects that Google does not hold itself out as indifferently serving the public or carrying others' products.

### C. It is Unnecessary to Reach Google's Preemption and Constitutional claims.

Because the Court concludes that Google Search is not a common carrier under Ohio law, it is unnecessary to go further and address whether treating Google Search as a common carrier is preempted by federal law or would run afoul of Google's First Amendment speech rights. *State v. Talty*, 103 Ohio St.3d 177, ¶ 9 (courts should avoid answering constitutional questions unless absolutely necessary).

### V. CONCLUSION

For the foregoing reasons, the Court grants Google's motion for summary judgment and denies the State of Ohio's motion for summary judgment. The Court hereby enters judgment in favor of Google on the State of Ohio's remaining claims.

IT IS SO ORDERED.

_____
JUDGE JAMES P. SCHUCK

**THIS IS A FINAL APPEALABLE ORDER.
THERE IS NO JUST CAUSE FOR DELAY**

The Clerk is ordered to serve upon all parties not in default to appear, notice of the judgment and date of entry upon the journal within three days of journalization.

15