CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

February 09, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **THOMAS RICHARDS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 5:25-cv-00082** |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **GOOGLE LLC,** | ) | **Senior United States District Judge** |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION**</u>

Pending before the court are plaintiff Thomas Richards's motion for a temporary restraining order under Federal Rule of Civil Procedure 65, ECF No. 3, and defendant Google LLC's motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 20, 23. Google LLC ("Google") filed its first motion to dismiss on September 19, 2025, ECF No. 20, to which Richards responded by filing an amended complaint just five hours later, ECF No. 22. Google filed a motion to dismiss the amended complaint on October 3, 2025. ECF No. 23. Thus, the first motion to dismiss, ECF No. 20, is **DENIED** as moot. For the reasons that follow, the court **GRANTS** Google's motion to dismiss the amended complaint, ECF No. 23, and **DENIES** Richards's motion for temporary restraining order, ECF No. 3.

## I.    Background

Thomas Richards developed "SpirituallySmart.com as his independent platform for sharing spiritual revelations from God" and has been operating biblical ministry online for

over 25 years. Am. Compl., ECF No. 22 ¶ 23. He uses the website to share "biblical messages, religious commentary, historical research, theological analysis, and his own artwork—all challenging institutional corruption from a biblical perspective." Id. ¶ 23. Richards alleges that in the early 2000s, he had "thousands of weekly visitors accessing his biblical content." Id. ¶ 24. Some of that content was critical of the Catholic Church. Id. Richards further alleges that his website "appeared prominently in Google search results for relevant topics" from at least 2000 to 2008, which allowed "his biblical message to reach a growing audience seeking alternative perspectives on Christianity and institutional accountability." Id. ¶ 29.

According to Richards, when the Vatican launched its YouTube channel through a special partnership with Google in 2009, Richards's website traffic decreased substantially. Id. ¶ 30-31. Specifically, Richards alleges that Google, working in partnership with the Vatican and the United States government, suppressed his online religious expression by limiting the visibility of his website and social media accounts in search results and preventing users from receiving notifications about his content. Id. ¶¶ 31-33, 43, 52. He claims that Google is "the secret architect of Vatican AI control" and is working to ensure that his criticism of institutional religious authority is suppressed.  Id. ¶¶ 36-38. More than that, Richards alleges that Google's "AI-powered discrimination operates under the Executive Order 'Preventing Woke AI in the Federal Government,'" which indicates the "direct government involvement in algorithmic religious discrimination." Id. ¶ 43.

Richards claims that there is "structural entanglement between government agencies and Google's operations" which transforms "private content moderation into state action subject to First Amendment constraints." Id. ¶ 48. In support of this assertion, Richards claims

that Google operates a "content request system" for government and law enforcement officials to "directly submit content for throttling or suppression through a special portal system." Id. ¶ 69.

Richards' critique of institutional corruption is allegedly suppressed by Google, while "Catholic institutional content receives normal algorithmic treatment." Id. ¶ 54. The complaint asserts that "users have no meaningful alternative pathways to discover biblical criticism of institutional authority" because Google holds "monopolistic control of essential information infrastructure." Id. ¶ 55-57.

Primarily, Richards believes that Google's suppression of his internet presence prevented him from "reaching millions of potential people," and cost him "substantial revenue" from possible "speaking engagements, donations, and related ministry activities." Id. ¶¶ 82-83. In other words, he believes his content held "exceptional viral potential," but Google intentionally suppressed his online presence and biblical message, such that Richards missed out on potential earnings and audience recognition. Id. ¶ 116.

Richards's twelve-count amended complaint alleges claims for violations of the First Amendment, violation of the Religious Freedom Restoration Act ("RFRA"), and "common-carrier discrimination." Id. ¶¶ 95-108, 119-26, 127-32. He also alleges state-law claims for violations of the Virginia Consumer Protection Act ("VCPA"), tortious interference with business relations, civil conspiracy, fraudulent misrepresentation, unjust enrichment, defamation by implication, misappropriation of name or image, and intentional interference with prospective economic advantage. Id. ¶¶ 109-18, 143-49, 150-55, 156-60, 161-65, 166-70,

171-75. He seeks injunctive and declaratory relief and at least $544 million in damages. Id. at

70-73.

On August 28, 2025, five days after filing his complaint, Richards filed a motion for a

temporary restraining order under Federal Rule of Civil Procedure 65.[1] ECF No. 3. He asks

the court to immediately enjoin Google from "continuing its suppression of [his] religious

content in search results and Google alerts" while this litigation is pending. ECF No. 3. Google

filed a response to the motion on September 12, 2025. ECF No. 15. On September 19, 2025,

Google filed a motion to dismiss. ECF No. 20. In response to Google's motion to dismiss,

Richards filed an amended complaint on the same day. ECF No. 22. Google then filed a

motion to dismiss the amended complaint. ECF No. 23. The motion for TRO includes

reference to claims that Richards has since dropped in his amended complaint.[2] Therefore,

the court only considers the portions of his motion for TRO relating to the claims that remain

in his amended complaint, as well as the motion to dismiss the amended complaint.

## II.    Discussion

### A.  Motion to Dismiss

### 1.  The First Amendment Claims – Counts I and II

---

[1] While Richards initially asked the court to enter a temporary restraining order without notice to Google under Rule 65(b), the court need not consider that request, as Google has now received notice and filed a response to the motion.
[2] The original complaint included claims of monopolization and attempted monopolization in violation of the Sherman Act § 2. These claims were referenced in the motion for temporary restraining order but are no longer included in Richards's amended complaint.

Richards alleges violations of the Free Speech Clause and the Establishment Clause of the First Amendment to the U.S. Constitution. Google argues that these constitutional claims must be dismissed because Google is a private company. The court agrees.

Richards alleges First Amendment violations, but in order for the Constitution to be implicated, the defendant must be a government entity or employee, or there must be some degree of state action.[3]

The First Amendment operates to protect private actors against government infringement on speech and religion. See Manhattan Cmty. Access Corp. v. Halleck, 587 U.S. 802, 808 (2019) ("[T]he Free Speech Clause prohibits only governmental abridgment of speech. The Free Speech Clause does not prohibit private abridgment of speech." (emphasis in original)).

Acknowledging that Google is not a government entity, Richards's complaint and opposition brief include lengthy discussions of the ways Google's conduct transforms it into a state actor, which would facilitate the constitutional claims. Richards relies on both the "pervasive entwinement" test from Brentwood Academy v. Tennessee Secondary School Athletic Association, 531 U.S. 288, 303 (2001), and the public function exception from Marsh v. Alabama, 326 U.S. 501 (1946).

---

[3] Google asserts that Richards does not specify any cause of action in connection with his constitutional claims. Even after Google suggested that Richards might be trying to invoke 42 U.S.C. § 1983 or liability under Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), Richards's opposition brief does not address this point or clarify a law under which he is asserting these constitutional violations. Nonetheless, since § 1983 suits require action "under color of state law" and Bivens suits only apply to federal employees, neither statute provides a cause of action for Richards to sue Google for constitutional violations.

According to <u>Brentwood</u>, "state action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." <u>Brentwood</u>, 531 U.S. at 295 (internal citation omitted). The "judicial obligation is . . . to assure that constitutional standards are invoked when it can be said that the State is <u>responsible</u> for the specific conduct of which the plaintiff complains." <u>Id.</u> (internal citations omitted).

In support of this alleged close nexus, Richards points to certain 2025 executive orders that he suggests "establish[] comprehensive federal coordination with private AI development." Am. Compl., ECF No. 22 ¶ 65. Richards also contends that the "Vatican is allied with the U.S. government" and that there is "[d]irect Vatican-Google coordination" which showcases the "pervasive entwinement" necessary for state action. <u>Id.</u> ¶ 65-72; <u>see also id.</u> at ¶ 76 ("Google's Vatican-aligned suppression of biblical religious expression operates through government-mandated algorithmic standards rather than purely private editorial decisions, transforming private content moderation into state action subject to First Amendment constraints.").

However, the executive orders that Richards cites involve restrictions on the use of AI and the training of AI models in the federal government, not Google search results. Further, any Vatican-Google partnership or coordination does not suggest that Google is entwined with the United States government, but rather a foreign entity. It cannot be said that "the State is responsible for the specific conduct of which [Richards] complains." <u>See Brentwood</u>, 531 U.S. at 295. There is no entwinement that converts Google's conduct into state action in this case.

The public function exception is similarly inapplicable here. The relevant question in "public function" cases is "whether the function performed [by a private group] has been traditionally the exclusive prerogative of the State." Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982) (internal citation omitted); see also Lam v. Shaffer, No. 5:21-cv-00057, 2021 WL 5632085, at *2 (W.D. Va. Dec. 1, 2021) (explaining that a private individual may be considered a state actor "when the state has delegated a traditionally and exclusively public function to a private actor"). There is no indication that the government delegated any function to Google, let alone a function that was traditionally and exclusively performed by the government. Even if the court accepts the assertion that Google provides essential public services, that cannot transform a private company into a state actor.

Richards leans heavily on Google's status as "a monopolist" according to two recent federal court decisions, but these cases did not deal with the prioritization of search results or content organization. Rather, the cases dealt with Google's monopoly power regarding digital advertising products, United States v. Google LLC, 778 F. Supp. 3d 797, 832 (E.D. Va. 2025), and Google's search distribution agreements, United States v. Google LLC, 747 F. Supp. 3d 1, 32 (D.D.C. 2024) (plaintiffs claim that Google has a monopoly over the general search services product market). In other words, these antitrust cases in which courts found that Google was in violation of the Sherman Act dealt with monopolies in areas or markets in which Richards is not attempting to compete. Richards does not purport to compete in the advertising market, nor the search engine market, so these cases do not provide support for

the "monopolistic control" arguments in the way Richards hopes.[4]  Furthermore, "the fact that the government licenses, contracts with, or grants a monopoly to a private entity does not convert the private entity into a state actor—unless the private entity is performing a traditional, exclusive public function." Manhattan Cmty. Access Corp. v. Halleck, 587 U.S. 802, 814 (2019). Here, the government has not granted Google a monopoly and Google is not performing a traditional, exclusive public function. Therefore, there is no conduct by Google that would transform it into a state actor via a theory of pervasive entwinement or the public function exception. The motion to dismiss Counts I and II is granted.[5]

### 2. Common Carrier Discrimination Liability – Count IV

In Count IV, Richards urges the court to find that Google is a common carrier by using Justice Thomas's framework from his concurrence in Moody v. NetChoice, LLC, 603 U.S. 707, 751 (2024). Richards relies on Justice Thomas's line: "[T]here is clear historical precedent for regulating transportation and communications networks in a similar manner as traditional common carriers given their many similarities." Id. at 751 (Thomas, J., concurring) (internal

---

[4]  The court reviewed Richards's supplemental filing, which included the Final Judgment and opinion issued on December 5, 2025, in the District of D.C. United States v. Google LLC litigation. See United States v. Google LLC, No. 20-cv-3010, 2025 WL 3496448, at *1 (D.D.C. Dec. 5, 2025). As that case dealt with Google's search distribution agreements and the way Google Search is preloaded on mobile phones, the additional opinion and outcome of that case does not implicate the claims in this case, which address alleged suppression of Richards's website within a Google search results page.

[5]  Google also argues that the constitutional claims should be dismissed for the independent reason that they are barred by the statute of limitations. Specifically, both § 1983 and Bivens actions have a two-year statute of limitations in Virginia, and Richards alleges that the "triggering event" occurred in 2009. In Richards's amended complaint, he alleges that "the systematic suppression constitutes ongoing constitutional violations with each algorithmic suppression creating a new injury, making statute of limitations inapplicable to continuing violations of constitutional rights." ECF No. 22 ¶ 3. Given that the court determined that there is no conduct by Google that would transform it into a state actor and thus Google cannot be responsible for constitutional violations, the court need not address the "continuing violations" doctrine as it applies to the statute of limitations for these claims.

citation omitted). While the law may someday reflect the argument that Richards raises, the current state of the law does not establish that Google is a common carrier.

Google filed an exhibit along with its motion to dismiss, consisting of an Ohio state court decision in which the court declined to treat Google as a common carrier under Ohio law. Ohio v. Google LLC, No. 21-CV-H-06-0274, at *10 (Ohio Ct. Com. Pl. Aug. 15, 2025) (finding that Google does not qualify as a "carrier" under Ohio law since it does not "transport persons or property for hire"). That court explained that "a common carrier must [] hold itself out to the public as ready and willing to serve the public indifferently," and that is not something Google claims to do. Id. at *13. Instead, Google admits that its decisions regarding which search results appear at the top of the list are within its discretion. Google "selects what information users will and will not see" and does not claim to present that information indifferently. Id. at *14.

Richards argues that the Ohio case is inapplicable given that it is from another state and the opinion was issued at the summary judgment stage. Though this may be true, Virginia's common carrier law would not provide for different results in this case. The Virginia Supreme Court has defined a common carrier as "one who, by virtue of his calling and as a regular business, undertakes for hire to transport persons or commodities from place to place, offering his services to all such as may choose to employ him and pay his charges." Bregel v. Busch Ent. Corp., 248 Va. 175, 177, 444 S.E.2d 718, 719 (1994). Central to this definition is the transport of persons or commodities. See, e.g., Murphy's Hotel, Inc. v. Cuddy's Adm'r, 124 Va. 207, 216, 97 S.E. 794, 797 (1919) (holding that the operator of a passenger elevator in a hotel was a common carrier); Phillips v. Delta Air Lines, No. 3:20-cv-00057, 2021 WL

9

3666884, at *3 (W.D. Va. Aug. 18, 2021) (noting that it was undisputed that a pilot of a passenger airplane was a common carrier); McVey v. Cincinnati, 671 N.E.2d 1288, 1290 (Ohio Ct. App. 1995) (explaining that Cincinnati was a common carrier by virtue of installing escalators near a stadium that were used to move the public during sporting events). Google does not "carry" anything for the purposes of its alleged common carrier status, but instead "creates its own product when it responds to a user's inquiry." Ohio, at *11.

Ultimately, Count IV is dismissed as Google is not a common carrier, and any "common carrier discrimination liability" that Richards alleges is inapplicable here.

### 3. Religious Freedom Restoration Act Violation – Count V

The Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1, provides that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." As used in that section, "the term 'government' includes a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States." § 2000bb-2. The section does not encompass actions between private parties or corporations, such as Google. See Zinski v. Liberty Univ., Inc., 777 F. Supp. 3d 601, 634 (W.D. Va. 2025) ("[T]he terms of RFRA do not appear to authorize suits between private parties, since judicial relief can only be obtained under the statute by proceeding against a government."); see also Billiard v. Charlotte Catholic High Sch., 101 F.4th 316, 323 (4th Cir. 2024) ("Neither the Supreme Court nor [the Fourth Circuit] has applied RFRA, which by its terms purports to limit government action, to a suit between private parties.").

Richards argues that Google, even as a private actor, is coordinating with the government to burden his religion. ECF No. 35 at 40. He contends that the government's coordination with Google leads to RFRA violations because of certain 2025 executive orders and policies as well as "DHS/FBI coordination for content moderation affecting religious expression." Id.

These assertions of government coordination with Google are far too speculative to transform Google into a state actor. Given that Google is a private party, and not a government entity, the motion to dismiss Count V is granted.

### 4. State Law Claims

Richards's state law claims include tortious interference with business relations, civil conspiracy, fraudulent misrepresentation, unjust enrichment, defamation by implication, intentional interference with prospective economic advantage, violation of the Virginia Consumer Protection Act, and violation of Viriginia's misappropriation statute. Section 230 of the Communications Decency Act bars these claims that Richards asserts against Google. Additionally, the state law claims are barred by the relevant statutes of limitations. But aside from any consideration of Section 230 or the statute of limitations, the state law claims must also be dismissed because Richards has failed to plausibly allege facts that support the elements of these claims.[6]

---

[6] Google also argues that the state law claims are barred by the First Amendment because they are predicated on Google's protected speech. See ECF 24 at 9. When platforms, such as Google, use editorial discretion and guidelines "to decide which third-party content those feeds will display, or how the display will be ordered and organized, they are making expressive choices. And because that is true, they receive First Amendment protection." Moody v. NetChoice, LLC, 603 U.S. 707, 740 (2024). The court need not reach the issue of whether the claims must be dismissed as protected by the First Amendment because the claims are dismissed for failure to state a claim.

**a.  Section 230 of the Communications Decency Act of 1996**

Section 230 of the Communications Decency Act states, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). "[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content—are barred." Zeran v. America Online, Inc., 129 F.3d 327, 330 (4th Cir. 1997).

Google's decision to place certain sites on the first page of search results constitutes a "traditional editorial function." Zeran, 129 F.3d at 330. "[A]cts of arranging and sorting content are integral to the function of publishing." M.P. v. Meta Platforms Inc., 127 F.4th 516, 526 (4th Cir. 2025) ("Decisions about whether and how to display certain information provided by third parties are traditional editorial functions of publishers, notwithstanding the various methods they use in performing that task."). Google's decision to display Richards's content on the first page of the search results or Google's decision to suppress Richards's content, even if true, would fall squarely within the protection of Section 230 as editorial decision-making. See also Dowbenko v. Google Inc., 582 Fed. App'x 801, 805 (11th Cir. 2014) (despite allegations that "Google manipulated its search results to prominently feature" an article that plaintiff did not like, Section 230 preempted plaintiff's claim).

Ultimately, Richards's state law claims seek to hold Google responsible as a publisher, and therefore, these claims are precluded by Section 230.

**b.  Failure to State a Claim**

Richards cannot survive the motion to dismiss for failure to state a claim because he did not plausibly allege the required elements of each count.

> **(1) Tortious Interference with Business Relations and Intentional Interference with Prospective Economic Advantage – Counts III and XII**

As tortious interference with business relations and intentional interference with prospective economic advantage essentially require the same elements under Virginia law, the court will address them together.[7] To state a claim of tortious interference with business expectancy under Virginia law, plaintiffs must allege:

> (1) existence of a business relationship or expectancy with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that plaintiff would have continued in the relationship or realized the expectancy absent defendant's intentional misconduct; (4) interference by improper methods; and (5) damages resulting from that interference.

NorthStar Aviation, LLC v. Alberto, 332 F. Supp. 3d 1007, 1019 (E.D. Va. 2018). For the third element, "mere proof of a plaintiff's belief and hope that a business relationship will continue is inadequate to sustain the cause of action; rather, the proof must establish a 'probability' not a 'possibility' of future economic benefit." Id. (internal citations omitted).

Richards's complaint fails to allege any specific business relationship or expectancy with reasonable certainty. While he may have hoped to develop business relationships and gain opportunities that would lead to economic benefits, he has no way to indicate that this result was probable, rather than possible. Although he suggests that he had "viral potential," this allegation is both speculative and conclusory. Am. Compl., ECF No. 22 ¶ 110. Given

---

[7] Google's brief addresses Counts III and XII together and Richards's response does not alter this format. See ECF 24 at 20, ECF 35 at 45.

13

Richards's inability to identify business relationships to satisfy the first element, he also cannot sufficiently allege that Google had any knowledge of his business relationships or expectancies to satisfy the second element.

Richards's assertions in the amended complaint amount to a recitation of the rest of the elements for his tortious interference claim. While his calculation of "quantifiable damages" is detailed, there is no plausible allegation that Google intentionally caused this alleged financial loss. Counts III and XII are dismissed.

### (2) Violation of Virginia Consumer Protection Act – Count VI

Richards claims that Google has engaged in deceptive practices in violation of the Virginia Consumer Protection Act. See Va. Code Ann. § 59.1-200. Google argues that Richards does not sufficiently allege that Google is a "supplier" under the statute, and there are no "consumer transactions" at issue in this case, so this claim fails at the threshold. See ECF No. 24 at 19.

"Consumer transaction" has a specific definition under Virginia Code § 59.1-198. The amended complaint acknowledges this. See Am. Compl., ECF No. 22 ¶ 136. Under the statute, "consumer transaction means . . . the advertisement, sale, lease, license, or offering for sale, lease, or license, of goods or services to be used primarily for personal family or household purposes." See Va. Code Ann. § 59.1-198. A supplier "means a seller, lessor, licensor, or professional that advertises, solicits, or engages in consumer transactions." Id.

Richards's opposition brief relies on a Fourth Circuit case dealing with personal jurisdiction to argue that Google engages in consumer transactions. See UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344 (4th Cir. 2020). This reliance is misguided. Kurbanov analyzes

14

the defendant's website in the context of determining whether the defendant "purposefully availed himself of the privilege of conducting business in Virginia." Id. at 353. The court in that case found that visitors to the website and the defendant were in a "commercial relationship" for the purposes of establishing minimum contacts and purposeful availment. Id. Richards argues that this logic should be imported to his use of Google for the purposes of establishing a "consumer transaction" under the VCPA. See ECF No. 35 at 46-56. Despite his lengthy explanation, this argument is not persuasive.[8]

Consequently, Count VI is dismissed because there are no adequate allegations of a consumer transaction in this case that would state a claim under the statute.

### (3) Civil Conspiracy – Count VII

"A common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." Com. Bus. Sys., Inc. v. Bellsouth Servs., Inc., 249 Va. 39, 48, 453 S.E.2d 261, 267 (1995). The plaintiff must also sufficiently allege "existence of the underlying cause of action." Bd. of Dirs. of Lesner Pointe Condo. on Chesapeake Bay Ass'n v. Harbour Point Bldg. Corp., No. CL00-1893, 2002 WL 32072394, at *8 (Va. Cir. Ct. June 18, 2002).

There is no underlying cause of action that would give rise to a conspiracy based on Google's alleged algorithmic suppression of particular content. To the extent that Richards alleges that the Vatican and Google are participants in a civil conspiracy, the Vatican's

---

[8] Richards's opposition brief also misquotes the Virginia Consumer Protection Act. See ECF No. 35 at 50. Richards argues that the VCPA covers "consumer services," which could encapsulate Google's search engine service. However, the language of the statute does not include the phrase that Richards quotes. See Va. Code Ann. § 59.1-198 (referring only to "consumer transactions," not "consumer services").

launching of a YouTube channel is not a concerted action accomplished by an unlawful purpose. Richards has not alleged facts that plausibly suggest a civil conspiracy in this case. Count VII is dismissed.

### (4) Fraudulent Misrepresentation – Count VIII

Richards's claim of fraudulent misrepresentation primarily addresses Google's "Honest Results" policy, which he alleges "explicitly promises 'Google Search does not provide special treatment such as ranking boosts or specialized support based on personal or financial relationships, including advertising or unrelated business partnerships.'" Am. Compl., ECF No. 22 ¶ 152. Richards states that these representations are false, Google knew these representations were false at the time they were made, and "Google made these representations with intent to induce content creators and users to rely on Google's purported neutrality." Id. ¶ 154.

These allegations amount to a recitation of the elements of fraudulent misrepresentation. To allege fraudulent misrepresentation under Virginia law, a plaintiff must plead: "(1) a false representation of material fact; (2) made intentionally (for actual fraud), or negligently (for constructive fraud); (3) reliance on that false representation to their detriment; and (4) resulting damage." Julian v. Rigney, No. 4:13-cv-0054, 2014 WL 1207980, at *17 (W.D. Va. Mar. 24, 2014). In accordance with Rule 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Richards suggests that the "Honest Results" policy is a fraudulent misrepresentation because Google's alleged partnership with the Vatican contradicts the policy by exemplifying

special treatment for the Vatican. Richards's allegation that Google has defrauded him by suppressing his search results because of its relationship with the Vatican is entirely speculative and does not meet the pleading requirements under Rule 9(b).

Richards has not sufficiently alleged facts that plausibly suggest any fraudulent misrepresentation in this case. Count VIII is dismissed.

### (5) Unjust Enrichment – Count IX

Richards brings a claim for unjust enrichment because there is no contract in this case, and in the absence of an enforceable contract, the law may imply a promise to pay if the circumstances show unjust enrichment. See Ellis & Myers Lumber Co. v. Hubbard, 123 Va. 481, 96 S.E. 754, 760 (1918). To plead a claim for unjust enrichment, the plaintiff must show: "(1) he conferred a benefit on the other party; (2) the other party had knowledge that the claimant was conferring the benefit; and (3) the other party accepted the benefit under circumstances that render it inequitable for him to retain the benefit without paying for the value he received." Odyssey Imaging, LLC v. Cardiology Assocs. of Johnston, LLC, 752 F. Supp. 2d 721, 724-25 (W.D. Va. 2010); see also Schmidt v. Household Fin. Corp., II, 276 Va. 108, 116, 661 S.E.2d 834, 838 (2008) (listing elements of unjust enrichment claim).

It is unclear what benefit Richards may have conferred on Google. Richards seems to say that his religious content had value that Google "monetized through advertising revenue." ECF No. 22 ¶ 157. But Richards cannot identify any facts suggesting that Google earned any money from ranking Richards's site lower on the search results page.

Richards's opposition brief uses nine pages to explain that "Google enriches itself by appropriating Mr. Richards' early internet investment without providing the corresponding

benefits." ECF No. 35 at 58-67. Richards compares his early engagement with the internet to an initial investment in a start-up company and believes that Google is essentially "refus[ing] to honor the 'stock certificates' of early investors who made [it] valuable." Id. at 59. Richards also identifies several other ways that Google "benefits" in nonmonetary ways—from power and control over information to partnerships with the Vatican. Id. at 61-62.

Richards's allegations of a benefit he conferred on Google are entirely speculative. Accordingly, Count IX is dismissed.

### (6) Defamation by Implication – Count X

Richards alleges that Google's "algorithmic manipulation" that prioritizes other accounts and does not place Richards's website near the top of the results implies, in a defamatory capacity, "that Richards lacks credibility and relevance . . . creating the false implication that Richards is less authoritative or trustworthy as a religious commentator." Am. Compl., ECF No. 22 ¶ 162.

Richards cites no case law to support this claim in his opposition brief, but relies only on the Restatement (Second) of Torts § 568(3). The Restatement section he cites concerns distinguishing libelous conduct from slanderous conduct. Richards relies on a comment from the Restatement to suggest that "defamatory meaning can be communicated through persistent conduct." ECF No. 35 at 68. Thus, Richards seems to suggest that the "persistent conduct" in this case comes from Google's repeated "algorithmic manipulation," and that alone should be considered a communication for a defamation by implication claim. See ECF No. 22 ¶ 162, ECF No. 35 at 68.

But, contrary to Richards's argument, a specific actionable statement must be identified for a defamation claim. In Virginia, "in cases of defamation by implication, the focus is on whether 'the words and statements complained of . . . are reasonably capable of the meaning ascribed to them by innuendo' and . . . the 'meaning of the alleged defamatory language cannot, by innuendo, be extended beyond its ordinary and common acceptation.'" Alexander v. Martin Agency, No. 0272-24-2, 2025 WL 2598200, at *3 (Ct. App. Va. Sept. 9, 2025) (citing Webb v. Virginian-Pilot Media Cos., 287 Va. 84, 89, 752 S.E.2d 808, 811 (2014)). This description makes plain that "words or statements" are necessary for a defamation by implication claim. Id.

As Richards has not identified any particular statement that was defamatory, this claim cannot be permitted to proceed. The conduct that Richards alleges—the decision by Google to rank his website lower on the list of search results than he would like—is not a statement, and therefore, Count X is dismissed.

### (7) Violation of Virginia Misappropriation Statute – Count XI

Virginia's misappropriation statute provides a cause of action for persons "whose name, portrait, or picture" is used without their consent "for advertising purposes or for the purposes of trade." Va. Code Ann. § 8.01-40.

Richards recites the language of the statute and then maintains that "Google derives substantial advertising revenue from users accessing Richards's content through search results, while simultaneously suppressing his visibility, effectively using his identity for Google's commercial benefit without compensation or consent." Am. Compl., ECF No. 22 ¶ 168. Again, this allegation is entirely conjectural. It is difficult to discern how Richards can plausibly

allege that Google used his name or image without his consent in violation of this Virginia statute, when the whole point of his complaint is that Google did not promote his content enough. Count XI is also dismissed for failure to state a claim.

### c. Statute of Limitations

Even if Richards could state a claim for any of the violations of state law he alleges, the claims are time barred. Richards confirms that the "triggering event" in this case occurred in 2009, but most of the state law claims he brings are subject to a two-year statute of limitations.[9] The claims of tortious interference and misappropriation are subject to five-year statutes of limitations, see Dunlap v. Cottman Transmission Systems, LLC, 287 Va. 207, 222, 754 S.E.2d 313, 321 (2014); Moore v. National Collegiate Athletic Ass'n, No. 1:21-cv-01447, 2022 WL 2306761, at *2 (E.D. Va. June 27, 2022). The unjust enrichment claim has a three-year statute of limitations. See East West, LLC v. Rahman, 873 F.Supp.2d 721, 730 (E.D. Va. 2012). Finally, the statute of limitations for the civil conspiracy claim "is based on the statute of limitations for the underlying act." Lokhova v. Halper, 995 F.3d 134, 148 (4th Cir. 2021).

There is no apparent reason why Richards could not have brought this suit earlier. This is not a close case where Richards narrowly missed the filing deadline—this is a case where Richards insists that there was a "triggering event" 16 years ago, yet did not file suit until 2025.

---

[9] See Va. Code § 59.1-204.1(A) (two-year statute of limitations for Virginia Consumer Protection Act); Schmidt v. Household Fin. Corp., II, 276 Va. 108, 117, 661 S.E.2d 834, 838 (2008) (applying two-year statute of limitations for VCPA claim); Lambert v. Sanofi US Servs., Inc., No. 7:23-cv-319, 2024 WL 1608018, at *8 (W.D. Va. Apr. 12, 2024) (applying two-year statute of limitations for fraudulent misrepresentation claim); Va. Code § 8.01-247.1 (one-year statute of limitations for defamation claim); Va. Code § 8.01-243(A) (two-year statute of limitations for personal actions for personal injury); Va. Code § 8.01-248 (two-year statute of limitations for personal actions for which no other limitation is specified).

Therefore, all of the state law claims must be dismissed for the independent reason that they do not comply with the statutes of limitations.

### B. Temporary Restraining Order

A temporary restraining order is a form of preliminary injunctive relief that "should be granted only sparingly and in limited circumstances." 2311 Racing LLC v. Nat'l Ass'n for Stock Car Auto Racing, LLC, 139 F.4th 404, 408 (4th Cir. 2025) (internal citations omitted).  It is an "extraordinary remedy" that is "never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). To obtain a temporary restraining order, the movant must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm without preliminary relief; (3) that the balance of equities tips in his favor; and (4) that preliminary injunctive relief is in the public interest. See id. at 20; see Mogensen v. Welch, 707 F. Supp. 3d 604, 610 n.1 (W.D. Va. 2023). A temporary restraining order "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Am. Fed'n of Tchrs. v. Bessent, 152 F.4th 162, 169 (4th Cir. 2025) (emphasis in original) (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)).

Richards is not entitled to preliminary injunctive relief because he has not shown a likelihood of success on the merits for any of the topics addressed in his motion. The motion for a temporary restraining order focuses on his claims alleging violations of the First Amendment and "common carrier violations."[10] See ECF No. 3 at 8-9. Since the court has determined that Google may not be treated as a government actor and it does not qualify as a

---

[10] The motion also included a discussion of the Sherman Act violations, but there is no need for the court to analyze or discuss these arguments as the Sherman Act monopolization claims have been dropped from the amended complaint.

common carrier under either federal or state law, the First Amendment claims and the common carrier violations were dismissed for failure to state a claim. Correspondingly, there is no likelihood of success on the merits and the motion for a temporary restraining order must be denied.[11]

Additionally, the court must deny the motion for a temporary restraining order because Richards fails to show that he is likely to suffer irreparable harm without preliminary relief. "To establish irreparable harm, the movant must make a clear showing that it will suffer harm that is neither remote nor speculative, but actual and imminent." Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell, 915 F.3d 197, 216 (4th Cir. 2019) (internal citations omitted). "[T]he harm must be irreparable, meaning that it cannot be fully rectified by the final judgment after trial." Id.

Richards states in his motion that Google has been systematically suppressing his biblical religious expression for "over 16 years," but does not indicate any reason why he could not bring suit until 2025. ECF No. 3, at 2. The delay in filing this lawsuit indicates that any harm that Richards may suffer is not imminent, but has been ongoing for more than a decade, which "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary

---

[11] Other courts in this circuit have determined that granting a motion to dismiss necessarily disposes of a pending motion for a temporary restraining order and a detailed discussion of the TRO is not required. See Crutchfield v. Holcomb, No. 4:11-cv-00034, 2011 WL 4634033, at *6 (W.D. Va. Oct. 4, 2011) (citing U.S. Airline Pilots Ass'n v. AWAPPA, LLC, 615 F.3d 312, 320-21 (4th Cir. 2010)) ("Because USAPA's complaint failed to state a claim upon which relief could be granted, the district court did not err in denying USAPA's request for a temporary restraining order and preliminary injunction.")); see also Pless v. State Employees' Credit Union, No. 3:25-cv-00528, 2025 WL 2438480, at *1 (W.D.N.C. Aug. 14, 2025) ("Having determined that this action must be dismissed, the Court does not reach the merits of Plaintiff's Motion for a Temporary Restraining Order, which will be denied without prejudice.").

relief and suggests that there is, in fact, no irreparable injury." Moon Dot, Inc. v. Q Shack Corp., No. 3:25-CV-00396, 2025 WL 2420990, at *6 (W.D.N.C. Aug. 21, 2025).

The First Amendment harm that Richards asserts is "inseparably linked" to the likelihood of success on the merits of his First Amendment claim. See WV Ass'n of Club Owners & Fraternal Servs., Inc., v. Musgrave, 553 F.3d 292, 298 (4th Cir. 2009). While "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," there must be a showing that there indeed was a "loss of First Amendment freedoms" in order to establish the presence of an irreparable injury. Elrod v. Burns, 427 U.S. 347, 373-74 (1976). Thus, since Richards is unable to prevail on his First Amendment claims, then he cannot show that he will suffer an irreparable injury without issuance of a temporary restraining order.

## IV.    Conclusion

For the foregoing reasons, Google's motion to dismiss the amended complaint is **GRANTED**, and Richards's motion for a temporary restraining order is **DENIED**.

An appropriate Order will be entered.

Entered: February 9, 2026

Michael F. Urbanski
U.S. District Judge
2026.02.09 12:05:28
-05'00'

Michael F. Urbanski
Senior United States District Judge